753 A.2d 533

John E. Jackson COLE

v.

STATE FARM MUTUAL INSURANCE COMPANY.

No. 92, Sept. Term, 1999.

Court of Appeals of Maryland.

June 14, 2000.

Cary J. Hansel (Timothy F. Maloney of Joseph, Greenwald & Laake, P.A., on brief), Greenbelt, for petitioner.

Charles C. Bowie (Ryan P. Richie, on brief), Lanham, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, WILNER, CATHELL, HARRELL and THEODORE G. BLOOM (retired, specially assigned), JJ.

HARRELL, Judge.

William Dawson Cave shot and killed Sharyn Cole on 17 September 1994 while she was seated in her parked van in the driveway of his Brandywine, Maryland, home. As a result, John Eddy Jackson Cole (Petitioner), husband of Ms. Cole, submitted, as personal representative of her estate, a claim for accidental death benefits under Ms. Cole's automobile liability policy written by State Farm Mutual Automobile Insurance Company (State Farm). State Farm (Respondent) denied coverage. Petitioner then filed a breach of contract claim against Respondent in the District Court of Maryland sitting in Prince George's County. Upon Respondent's request for a jury trial, the case was transferred to the Circuit Court for Prince George's County. The Circuit Court granted Respondent's motion for summary judgment, concluding as a matter

of law that Ms. Cole's death was not the result of an "accident" within the meaning of that term as used in the policy. In an unpublished opinion, the Court of Special Appeals affirmed. At Petitioner's request, we granted a writ of certiorari [1] to determine whether Ms. Cole's death was the result of an "accident." [2]

## BACKGROUND

The facts of this case are not in dispute. On 17 September 1994, Petitioner and Ms. Cole traveled, in Ms. Cole's 1994 Ford Van, to the home of William Dawson Cave.[3] Mr. Cole drove the van. Petitioner and Ms. Cole's children, Erica (Age 5) and Cheyanne (Age 1) occupied the rear seat of the van. The purpose of the trip was to pick up Catherine Morgan Cole, Petitioner's daughter from his previous marriage to Heather Cave, for a previously scheduled visitation. Heather Cave was Mr. Cave's daughter.

After Petitioner pulled into Mr. Cave's driveway, he left the engine of the van idling and exited the van to approach the house. When Petitioner was only a few steps away from the van, he encountered his former father-in-law. Mr. Cave produced a handgun and shot Petitioner two times. Petitioner retreated to the van and, as he was opening the driver side door, Mr. Cave shot Petitioner again. Mr. Cave then circled the van toward Ms. Cole's side of the vehicle. In her panic, she was unable to release her seat belt. Mr. Cave fired two shots at Ms. Cole from close range through the passenger window. Mr. Cave then shot and killed himself. Petitioner survived the attack, but Ms. Cole died from her gunshot

1. *Cole v. State Farm*, 356 Md. 177, 738 A.2d 854 (1999).

2. The specific question presented in Petitioner's petition for writ of certiorari is:
   [d]id the Circuit Court err in determining that the event resulting in the death of Appellant's decedent was not an accident?

3. The vehicle was titled in her name only.

injuries. Cheyanne received minor injuries from flying glass. Fortunately, Erica was unharmed.

At the time of the shooting, State Farm had in effect a policy of insurance, naming Ms. Cole as the insured, covering her van. The provision of the policy that is relevant to this appeal is the "Death, Dismemberment, and Loss of Sight" clause in Section V of the policy. Section V provides, in pertinent part:

We [Respondent] will pay the amount shown in the schedule that applies for death, or *loss*, caused by accident. The *insured* has to be *occupying* or be struck by a land motor vehicle or trailer. The death or *loss* must be the direct result of the accident and not due to any other cause. The death or *loss* must occur within 90 days of the accident.

(Emphasis in original). The amount of coverage for accidental death was $10,000.

On 13 January 1997, Petitioner, acting as the personal representative for his wife's estate, filed a claim with Respondent requesting payment pursuant to Section V of his wife's insurance policy. By letter dated 16 January 1997, Respondent denied Petitioner's claim. The reason given was that, relying on *DeJarnette v. Federal Kemper Ins. Co.*, 299 Md. 708, 475 A.2d 454 (1984), the insurer did "not feel that the injuries sustained by Sharyn K. Cole which resulted in her death, were the result of an accident." Essentially, State Farm viewed the cause of Ms. Cole's death as independent of the use of the covered vehicle.

Petitioner then filed a complaint in the District Court on 6 March 1997 alleging that Respondent breached the insurance contract by refusing to pay the accidental death benefit. He sought $10,000 in damages. Respondent requested a jury trial on 29 May 1997 and the case was transferred to the Circuit Court on 12 June 1997.

Petitioner filed a motion for summary judgment on 18 March 1998. In his motion, Petitioner pointed out that the parties agreed that Ms. Cole's insurance policy was in effect at the time of the incident and that she was seated in her van,

with the engine running, when she was shot fatally. He asserted that the only issue in the case was whether his wife's death was caused by an "accident" within the meaning of the term in the relevant policy coverage. Petitioner argued that the incident which caused his wife's death was an "accident" because she did not anticipate that she would be murdered while waiting in the van in Mr. Cave's driveway.

On 16 April 1998, Respondent filed an opposition to the Petitioner's motion for summary judgment.[4] Respondent admitted that when Ms. Cole was murdered her van was insured under a valid State Farm policy and that she was an occupant of the insured vehicle at the time Mr. Cave shot her. Respondent contended, however, that Maryland case law requires a casual connection between the use of a vehicle and the claimant's death before a court may declare liability under the policy. Respondent asserted that there was no connection between Mr. Cave's violent acts and Ms. Cole's use of her van. The fact that she was seated in her van when she was murdered, Respondent suggested, is not enough to impose liability under the policy.

In an order dated 21 May 1998, the Circuit Court denied Petitioner's motion for summary judgment and granted summary judgment in favor of Respondent, holding that:

> the word "accident" as used in Section V of the applicable insurance policy . . . is defined in the typical understanding of the word and is not given the liberal definition provided under the uninsured motorist coverage, and because the facts of this case do not support the argument that Sharyn Kae Cole's death was "caused by accident" as stated in Section V of the applicable policy.

Petitioner filed post-judgment motions, within ten days of the docketing of the order granting summary judgment, pursuant

---

4. Because of the relief requested in Respondent's opposition to Petitioner's motion for summary judgment, specifically that "judgment be entered in favor of State Farm Mutual Automobile Insurance Company," the Circuit Court treated the opposition as a cross-motion for summary judgment.

**304**

to Md. Rule 2–534. The Circuit Court denied those motions on 17 July 1998.

Petitioner noted an appeal to the Court of Special Appeals on 4 August 1998.[5] The intermediate appellate court set forth two alternative reasons for its affirmance of the Circuit Court's judgment. Relying on an excerpt from *DeJarnette v. Federal Kemper Ins. Co.*, 299 Md. 708, 475 A.2d 454 (1984), the court determined a claimant may not recover under an automobile liability insurance policy when the injury inflicted upon the claimant while situated in an automobile was caused by force or conduct not related to the use of the automobile. The court also explained, as an alternative basis, that "whether or not an injury is accidental has been held determinable by the state of mind of the person who inflicts the injury, rather than by that of the injured person," quoting from *Glens Falls*

---

5. As the present case was proceeding through the trial courts, two related actions were advancing concurrently through the same courts. The related actions, identified in the Circuit Court as CAL97–18707 and CAL97–18708, involved Petitioner's unsuccessful efforts, as an individual and as personal representative of his wife's estate, respectively, to recover personal injury protection (PIP) benefits under the same policy.

CAL97–18707 and CAL97–18708 originally were filed and tried together in the District Court. In both cases, the District Court found there was no entitlement to PIP benefits. Before Petitioner's appeals of the District Court's judgments in those cases were argued in the Circuit Court, he filed a motion to consolidate CAL97–18707 and CAL97–18708 with the present case. The order granting consolidation of the three cases was signed by the Circuit Court on 31 July 1998, but not docketed until 1 December 1998. The Circuit Court affirmed the District Court judgments in CAL97–18707 and CAL97–18708 on 1 December 1998. Petitioner filed a notice of appeal to the Court of Special Appeals in CAL97–18707 and CAL97–18708 on 22 December 1998, but apparently withdrew the appeal on 12 March 1999.

Although Petitioner filed his notice of appeal in the present case within thirty days of the disposition of his post-judgment motions, but before final judgments were entered in the consolidated actions, CAL97–18707 and CAL97–18708, the judgment in the present case was final, when appealed, and we may proceed with our consideration of the merits of the present appeal. *See Yarema v. Exxon Corp.*, 305 Md. 219, 236, 503 A.2d 239, 248 (1986)("consolidated cases are not to be treated as a single action for purposes of Md. Rule 2–602; instead, each one of the cases is to be treated as a separate action."); *See also Coppage v. Resolute Ins. Co.*, 264 Md. 261, 264–63, 285 A.2d 626, 628 (1972).

*Ins. Co. v. American Oil Co.*, 254 Md. 120, 127–28, 254 A.2d 658, 663 (1969). Viewing the 17 September 1994 incident from Mr. Cave's perspective, rather than Ms. Cole's, the court concluded that Ms. Cole's death "in no way qualified as an 'accident' within the context of the [her] automobile insurance policy."

## ANALYSIS

### I.

Before we consider the merits of this appeal, we set forth the principles that will guide our interpretation of the language of the insurance policy in question. Our primary task in interpreting an insurance policy, as with any contract, is to apply the terms of the contract itself. *See Chantel Assoc. v. Mount Vernon Fire Ins. Co.*, 338 Md. 131, 142, 656 A.2d 779, 784 (1995); *Harford County v. Harford Mut. Ins. Co.*, 327 Md. 418, 434, 610 A.2d 286, 294 (1992); *Mitchell v. Maryland Casualty Co.*, 324 Md. 44, 56, 595 A.2d 469, 475 (1991); *Pacific Indem. Co. v. Interstate Fire & Cas. Co.*, 302 Md. 383, 388, 488 A.2d 486, 488 (1985). We look first to the contract language employed by the parties to determine the scope and limitations of the insurance coverage. *See Chantel Assoc.*, 338 Md. at 142, 656 A.2d at 784; *Kendall v. Nationwide Ins. Co.*, 348 Md. 157, 165, 702 A.2d 767, 771 (1997). When interpreting the words of a contract, we seek to give the words their "customary, ordinary, and accepted meaning." *Mitchell*, 324 Md. at 56, 595 A.2d at 475. In addition, we "examine the character of the contract, its purpose, and the facts and circumstances of the parties at the time of execution." *Pacific Indem.*, 302 Md. at 388, 488 A.2d at 488.

If the meaning of the terms of the insurance policy are plain and unambiguous, we will determine the meaning of the terms of the contract as a matter of law. *See id.* at 389, 488 A.2d at 489. If the terms are ambiguous, however, we will look to evidence from extrinsic sources such as dictionaries or an interpretation of the term employed by one of the parties before the dispute arose. *See id.* A term of a contract is

**306**

ambiguous if, to a reasonably prudent person, the term is susceptible to more than one meaning. *See Pacific Indem.,* 302 Md. at 389, 488 A.2d at 489; *St. Paul Fire & Marine Ins. Co. v. Pryseski,* 292 Md. 187, 198, 438 A.2d 282, 288 (1981); *Truck Ins. Exch. v. Marks Rentals,* 288 Md. 428, 433, 418 A.2d 1187, 1190 (1980).

Turning to the policy at issue in this case, we note that it is, in our experience, somewhat unusual to find the type of first party coverage [6] represented by the accidental death and dismemberment coverage here in question in an automobile liability policy. Automobile liability insurance, typically thought of as third party coverage, often contains a number of types of first party coverage, such as uninsured motorist claims, collision, comprehensive, medical payments, and personal injury protection. *See Bausch & Lomb, Inc. v. Utica Mut. Ins. Co.,* 355 Md. 566, 582, 735 A.2d 1081, 1090 (1999). As noted *supra,* Section V of Ms. Cole's State Farm policy states, in pertinent part, that:

> We [Respondent] will pay the amount shown in the schedule that applies for death, or *loss,* caused by accident. The *insured* has to be *occupying* or be struck by a land motor vehicle or trailer. The death or *loss* must be the direct result of the accident and not due to any other cause. The death or *loss* must occur within 90 days of the accident.

(Emphasis in original).

The language of the policy plainly requires the existence of three interdependent elements before Respondent is obligated to pay accidental death benefits to its insured. The insured first has to be occupying a motor vehicle when a death or loss is inflicted. Next, the death or loss caused to the insured must be the direct result of an "accident." [7] Finally, the death

---

6. First party coverage "is a promise by the insurer to pay its own insured, rather than a promise to its insured to pay some third party." *Reese v. State Farm Mut. Ins. Co.,* 285 Md. 548, 552, 403 A.2d 1229, 1231 (1979).

7. The term "accident" is not defined in the Defined Words section or any other part of the insurance policy.

or loss must occur within ninety days of the "accident." Respondent concedes that Ms. Cole occupied a covered vehicle at the time she was shot and that she died within moments after she was shot. Thus, the sole focus of our inquiry in this case is whether Ms. Cole's death was the direct result of an "accident."

Both parties assert that under Maryland law, "accident" is defined for present purposes as "a happening; an event that takes place without one's foresight or expectation; an event which proceeds from an unknown cause, or is an unusual effect from a known cause, and therefore not expected." *Harleysville Mut. Cas. Co. v. Harris & Brooks, Inc.* 248 Md. 148, 151, 235 A.2d 556, 557 (1967) (citations omitted). This definition provides incomplete guidance in the present case, however, because it fails to establish through whose eyes one should analyze whether Ms. Cole's death was the result of an "accident."

The distinction is critical. The undisputed facts of this case are that Mr. Cave carried a gun to Ms. Cole's van, aimed it toward her, and fired it. Standing in Mr. Cave's shoes, Ms. Cole's death hardly can be called an accident. It seems obvious that was the lower courts' analytical vantage point and remains State Farm's in this Court. Switching positions, however, if one takes Ms. Cole's perspective, her death may be said to have been the result of an accident if her murder occurred without her foresight or expectation. *See id.* No alternative vantage points have been suggested by the parties, nor do we deem there to be any. Therefore, our real task in this case is to determine whether the fatal incident should be analyzed from the perspective of Mr. Cave, the murderer, or Ms. Cole, the insured victim.

Respondent offers three Maryland cases to support its position that we should define the term "accident" from the actor's, Mr. Cave's, perspective. The first is *Harleysville Mut. Cas. Co. v. Harris & Brooks, Inc.,* 248 Md. 148, 235 A.2d 556 (1967). Harris & Brooks, Inc. was an excavation contractor. After the employees of the company completed clearing

fifteen acres of land, they stacked the cleared trees in piles. The employees then added gasoline and rubber tires to the piles and set them on fire. The fire burned for two days. Neighboring property owners brought suit against the company for the smoke damage caused to their homes by the fire. The trial court entered judgment in favor of the homeowners and awarded approximately $3,000 in damages. Harris & Brooks, Inc. paid the homeowners and then brought a suit against its general liability insurer for reimbursement.

The policy that was the subject of the suit between Harris & Brooks, Inc. and its insurer required the insurer to pay all sums which Harris & Brooks, Inc. became legally obligated to pay as damages "caused by accident." *See Harleysville Mut. Cas. Co.*, 248 Md. at 150, 235 A.2d at 557. Hence, the implicit coverage insured against third party claims. The insurance company claimed that the damages caused to the homeowners were not "caused by accident."

We agreed with the insurance company's argument. We observed that the fact that damages were caused by an intentional act did not preclude us from finding that they were caused by "accident" if something unforeseen produces an unexpected result. *See id.* at 151, 235 A.2d at 558. Under the facts of the case, however, we concluded that when the contractor's employees intentionally stacked trees, set them afire with gasoline, and allowed the fire to burn for two days, the contractor should have foreseen the potential for the resultant damage. Accordingly, the homeowners' damages were not accidental.

Respondent next directs our attention to *Glens Falls Ins. Co. v. American Oil Co.*, 254 Md. 120, 254 A.2d 658 (1969). The issue in *Glens Falls Ins. Co.* was whether the intentional crash of a vehicle into a gasoline station constituted an "accident" under the terms of the driver's automobile liability policy. In an apparent effort to kill himself and his wife, the insured drove his car into the gasoline pumps of a gas station.

Both the driver and his wife survived the incident.[8] The station owner brought a negligence suit against the estate of the driver and the driver's insurance company. At the time of the incident, the policy obligated the insurer to indemnify the driver, its insured, against injuries "caused by accident," a form of third party coverage. The station owner obtained a default judgment because both defendants failed to appear at trial. It then filed an action against the driver's insurer attempting to collect the judgment. The insurer argued that the crash did not constitute an "accident" under the terms of the policy because the driver intended to crash into the station. We explained that there was a significant "distinction between 'caused by accident' and an intentional act, the consequences of which were clearly foreseeable as well as a necessary and natural result thereof." *Glens Falls Ins. Co.*, 254 Md. at 127, 254 A.2d at 662.[9] Because the damages resulting to the gas station were the naturally expected consequences of the insured's intentional act, we held that the damage to the station was not "caused by accident."

The final Maryland case of the principal trilogy relied upon by Respondent is *State Farm Mut. Auto. Ins. Co. v. Treas,* 254 Md. 615, 255 A.2d 296 (1969). In *Treas,* Harry Dawson testified that he dispatched two employees to his home to retrieve his car because during the previous night he had a domestic dispute with his wife. One of the employees, Treas, went to Dawson's home and began to drive down the driveway. At that point, Ms. Dawson appeared and placed herself

---

**8.** The driver committed suicide two weeks after the incident.

**9.** In *Glens Falls Ins. Co.,* we quoted from Appleman, 7 Insurance Law and Practice § 4312 (1942) stating, "whether or not an injury is accidental has been held determinable by the state of mind of the person who inflicts the injury." To the extent that treatise commentary is inconsistent with our holding in this case, we here disavow further reliance on it. We note further that in the 1999 supplement to Appleman, the editors have added the language "coverage still exists under the normal provisions of an automobile policy if there was no intention on the part of the insured to cause, by commission of his acts, resulting injuries or damages." Appleman, 7 Insurance Law and Practice § 4312 (1979, 1999 Cum.Supp.).

in front of the car to prevent Treas from driving away. Treas proceeded to drive slowly forward, hoping that Ms. Dawson would step away. She refused and continued to backpedal in front of the car. Treas accelerated and drove the car over Ms. Dawson. She died from the impact.

State Farm, Treas's automobile liability insurer, filed a petition for declaratory judgment to establish that Ms. Dawson's death was not covered under Treas's policy. The relevant terms of the policy obligated State Farm to pay for liability incurred by Treas if the liability was "caused by an accident." Again, the policy coverage at issue was for liability to a third party. The trial judge found that Ms. Dawson's death was "caused by an accident." We reversed the Circuit Court. We explained that injuries caused by intentional acts may be "caused by accident" if something in the intentional act produces an unusual or unexpected result. *See Treas,* 254 Md. at 620, 255 A.2d at 298. We then compared the facts of *Treas* with the facts in *Harleysville,* where the contractor was charged with foreseeing that smoke from its intentionally set fire could damage neighboring homes. We reasoned that if by the contractor's actions in *Harleysville* the damages to the houses were foreseeable, then the intentional act of Treas running over and killing Ms. Dawson certainly was foreseeable. Because we determined that Treas should have expected to strike Ms. Dawson with the car, we held that her death was not "caused by an accident."

Respondent offers *Harleysville, Glens Falls Ins. Co.,* and *Treas* to support its position that we should view the events that caused Ms. Cole's death from Mr. Cave's perspective. Respondent reasons that in each of the above cases this Court viewed the events that caused the damage from the actor's point of view and denied coverage in each case because the actor's intentional acts caused foreseeable damages. According to Respondent, when injury is caused by an intentional action, the injury cannot be the result of an "accident" because the actor intended to cause the resultant damage. Carrying that reasoning to the present case, Respondent asserts that "[t]his [C]ourt should follow its prior decisions in this instance,

and define "accident" according to its common, ordinary and everyday meaning, which would define the term from the perspective of the actor so as not to include the intentional shooting of another person."

Respondent advances shallow interpretations of *Harleysville*, *Glens Falls Ins. Co.*, and *Treas.* State Farm does not take into account reasoning in each of the cases that states "the fact that an injury is caused by an intentional act does not preclude it from being caused by accident if in that act, something unforeseen, unusual and unexpected occurs which produces the event." *Harleysville*, 248 Md. at 151–52, 235 A.2d at 558; see also *Glens Falls Ins. Co.*, 254 Md. at 127, 254 A.2d at 662; *Treas*, 254 Md. at 620, 255 A.2d at 298. The test employed in these cases is not whether the actor intended the effects of his or her actions. Rather, the question that a court must answer is whether the damage caused by the actor's intentional conduct was "unforeseen, unusual and unexpected." *See id.* Based on this test, the cases cited to us by Respondent actually may support Petitioner's position in the present case. If we determine that the proper perspective to view the relevant incident is that of the insured's, we must then view the events that caused Ms. Cole's death through her eyes.

A troublesome omission in *Harleysville, Glens Falls Ins. Co.*, and *Treas*, brought into focus by the present case, is that our reasoning in those cases did not clarify from which perspective a court should view an occurrence to determine whether the damages incurred from the occurrence were foreseeable or expected. Due, in part, to the roles the players in those cases occupied, i.e., the actor who committed the intentional act in each case was also the relevant insured party, our language is ambiguous as to whether the basis of the denial of coverage was because the damages were foreseeable from the intentional actor's perspective or because the damages were foreseeable from the insured's perspective.

In *Sheets v. Brethren Mut. Ins. Co.*, 342 Md. 634, 679 A.2d 540 (1996), we find some added clarity in aid of our analysis here. In *Sheets* we were called upon to define the term

"accident" as it was used in a general liability insurance policy. *Sheets* involved a suit by two policyholders against their insurer for indemnification from a lawsuit. In the underlying suit, a family that purchased the policyholders' home brought suit against the policyholders for negligently misrepresenting that the home's defective septic tank was in good working condition. The insurer refused to indemnify or defend its insureds in the home purchaser's suit because, in its view, negligent misrepresentation was not an "accident" under the terms of the policy.

In our analysis in *Sheets*, we relied upon *Harleysville, Glens Falls Ins. Co.,* and *Treas* to conclude that negligent misrepresentation may be considered an "accident." Of greatest relevance to the present case, we also clarified the perspective to be used in determining whether negligent actions may be considered accidental under the relevant policy. We explained, in pertinent part:

> [a]lthough our prior cases may have been less than clear in explaining the relevant inquiry, we hold today that an act of negligence constitutes an 'accident' under a liability insurance policy when the resulting damage was 'an event that takes place without [the insured's] foresight or expectation.' *Harleysville,* 248 Md. at 154, 235 A.2d at 559 (citation omitted). In other words, when a negligent act causes damage that is unforeseen or unexpected by the insured, the act is an 'accident' under a general liability policy.

*Sheets,* 342 Md. at 652, 679 A.2d at 548 [alteration in original]. Thus, under the cases cited to us by Respondent, as clarified by *Sheets* and by parity of reasoning, if Ms. Cole's death had been caused by a negligent act committed by Mr. Cave we unhesitatingly would hold that her death was the result of an "accident." We now consider whether we may extend this approach to interpretation of the word "accident" in the context of the intentional conduct that did cause her death.

This Court has not been faced with the question of whether an intentional tort may be considered an "accident" as that term is used in accidental death insurance coverage. The U.S.

District Court for the District of Maryland, however, has addressed this issue. In *Lincoln Nat'l Life Ins. v. Evans*, 943 F.Supp. 564 (D.Md.1996), the court was faced with a similar set of facts to those presented here. In the underlying facts of *Lincoln Nat'l Life Ins.*, Ms. Hawkins murdered her husband of ten years, Mr. Hawkins, by setting his bed on fire while he was sleeping. At the time of his murder, Mr. Hawkins was insured under two first party accidental death and dismemberment policies. The policies obligated the insurers to pay for losses "due to an accident." The estate of Mr. Hawkins filed a claim under both policies, but the insurance companies refused to pay because, in their estimation, Mr. Hawkins's death was not an "accident" under the terms of the policies.

The case came before the court on cross-motions for summary judgment.[10] The insurance companies argued that due to an alleged pattern of severe abuse by Mr. Hawkins against Ms. Hawkins, his murder was not an unexpected or unforeseen event and therefore not an "accident." To resolve the insurance companies' argument, the court first assayed to define the term "accident." The court stated that in defining "accident" in the case of an intentional homicide, the prevailing view is to look at the facts "from the viewpoint of the insured, not that of the killer." *Lincoln Nat'l Life Ins.*, 943 F.Supp. at 568. (citations omitted). The court explained that:

'[t]he majority of courts do not perceive the slaying through the eyes of the murderer, which would undoubtedly reflect a wilful, deliberate, calculated act rather than an accident. Instead they see the killing from the viewpoint of the victim to whom, absent misconduct from which he or she should have reasonably anticipated that he or she would be killed, the murder is unforeseen, unexpected and accidental within the terms of the insurance policy.' Thus, the necessary

---

10. Although the insurance policies were issued under a ERISA-governed benefit plan, the Court explained that it would be guided by Maryland law, to the extent it was available to interpret the policies at issue. *See Lincoln Nat'l Life Ins.*, 943 F.Supp. at 568.

inquiry in the within case focuses on what Mr. Hawkins' viewpoint was of the act which caused his death.

*Id.* (quoting *Lamb v. Northwestern Nat'l Life Ins. Co.*, 56 Md.App. 125, 130, 467 A.2d 182 (1983)).[11]

■ After making clear that the victim's perspective would control the court's analysis of the events, it explained and applied a two-part test to determine whether Mr. Hawkins should have expected, subjectively or objectively, that his wife would kill him. *See id.* (citing *Wickman v. Northwestern Nat'l Ins. Co.*, 908 F.2d 1077 (1st Cir.1990)). The subjective part of the test entailed the court inquiring whether the insured expected an attack similar to the kind which occurred. *See id.* If insufficient evidence existed to determine that the insured actually expected to be attacked, then the court would advance to the second, objective inquiry. In this prong of the test, the court inquires whether a reasonable person with the same knowledge and experience as the insured would have viewed the injury as highly likely to occur in light of the insured's past conduct. *See id.* If the answer to the objective question of the test was also in the negative, then the insured's death was the result of an "accident." *See id.*

Applying the foregoing analytical paradigm to facts before it, the court found no direct evidence in the record that established Mr. Hawkins expected to be murdered. It then sought to determine whether a reasonable person in Mr. Hawkins's position would have thought that the attack was highly likely to occur. The court concluded that although substantial evidence existed establishing that Mr. Hawkins severely abused Ms. Hawkins, including a fierce beating just

---

11. In *Lamb,* the Court of Special Appeals, applying the law of the District of Columbia, held that the murder of a man by his wife could be considered a death "through external, violent and accidental means" as that term was used in the double indemnity clause of the husband's life insurance policy. *See also Harris v. Nationwide Mut. Ins. Co.*, 117 Md.App. 1, 699 A.2d 447 (1997)(the term "accident" as it is used in Maryland's statutorily-required uninsured motorist coverage is broad enough to embrace coverage for injuries caused by an assault by an unidentified assailant on a policy holder).

hours before she eventually killed him, reasonable minds could differ as to whether, under the objective prong of the test, Mr. Hawkins's death was the result of an "accident." The court rejected the summary judgment motions because the resolution of the case was dependent on a question more properly for the trier of fact to resolve.

The test applied by the court in *Lincoln Nat'l Life Ins.* strikes us as essentially a more detailed version of the analytical approach we most recently employed in *Sheets*. The federal court's approach comports with Maryland law because it defines "accident" from the point of view of the insured. Specifically, and most germane to the case at hand, the test analyzes in detail and in a logical sequence the events of an intentional tort from the perspective of an insured who is also the victim of the intentional tort. Such is the factual context of the present case. Due to the conformity of the federal court's reasoning with our prior pronouncements in this area of Maryland law, as well as the factual similarities between *Lincoln Nat'l Life Ins.* and the present case, we adopt and shall employ here the test applied in *Lincoln Nat'l Life Ins.*

Applying that test to the present case, it is clear to us that Ms. Cole's death was the result of an "accident" as that term should be interpreted in her State Farm insurance policy. Respondent offered no evidence suggesting that, at the time Ms. Cole traveled to Mr. Cave's home, she expected that Mr. Cave was going to attempt to kill her. Viewing the undisputed facts of the case objectively, there is also no evidence from which a reasonable trier of fact could determine that a reasonable person in the same situation as Ms. Cole would have expected to be shot and killed as she sat in her van in Mr. Cave's driveway. From Ms. Cole's perspective, as the insured victim, the events which caused her death were "unforeseen, unusual and unexpected," and therefore an "accident." *See Sheets*, 342 Md. at 652, 679 A.2d at 548; *Harleysville*, 248 Md. at 151–52, 235 A.2d at 558; see also *Glens Falls* Ins. Co., 254 Md. at 127, 254 A.2d at 662; *Treas*, 254 Md. at 620, 255 A.2d at 298.

We also consider other jurisdictions that have dealt with the issue before us in analogous first party coverage situations. We do so in recognition that:

> like a state which adopts, by copying, a foreign statute, ... parties who adopt an insurance policy, which apparently has had nationwide use and has been judicially construed in five or six states, adopt with it the uniform judicial construction that it has received in other states ... In other words, while the contract term on its face may be ambiguous, ... the court in this situation may treat the term as unambiguous and, absent any factual dispute, adopt, as a matter of law, that construction placed on the language by the courts of other states.

*Pacific Indem. Co.*, 302 Md. at 401, 488 A.2d at 495 (citations and internal quotations omitted). We find that our holding is in accord with those in the majority of states that have considered how to define the term "accident" in similar types of first party coverage contexts. *See Fox v. Country Mut. Ins. Co.*, 327 Or. 500, 964 P.2d 997 (1998)(in party's claim for insurance coverage following an intentional car crash, the court must view the event from the perspective of the insured); *Roque v. Nationwide Mut. Ins. Co.*, 502 Pa. 615, 467 A.2d 1128, 1129 (1983)(in interpreting a double indemnity clause of a life insurance policy "the test of whether an injury is the result of an accident is to be determined from the view point of the insured and not the viewpoint of one who committed the act causing injury."); *Nallan v. Union Labor Life Ins. Co.*, 42 N.Y.2d 884, 397 N.Y.S.2d 786, 366 N.E.2d 874, 875 (1977)(whether a shooting from an unknown assailant is accidental is determined by looking at the event from the point of view of the insured to see whether the shooting was unexpected, unusual, and unforeseen); *Republic Nat'l Life Ins. v. Heyward*, 536 S.W.2d 549, 552 (Tex.1976)(test of whether a murder is accidental under a life insurance policy is determined from the viewpoint of the insured); *Provident Life and Accident Ins. Co. v. Hanna*, 294 Ala. 37, 311 So.2d 294, 297 (1975)(the issue of whether a death was accidental for the purposes of an accidental death policy must be resolved from

the standpoint of the insured); *Steele v. General American Life Ins. Co.*, 217 Kan. 24, 535 P.2d 948, 953 (1975)(when an insured is killed in an encounter or fight with another his or her death is caused "through accidental means," as that phrase is used in an accidental insurance policy, if the insured did not reasonably anticipate that he or she would be killed by his antagonist); *Bakos v. Insura Prop. & Cas. Ins. Co.*, 125 Ohio App.3d 548, 709 N.E.2d 175, 178 (1997)(when an insured is killed by another and the killing is unforeseen by the victim, the death accidental); *Moss v. Protective Life Ins. Co.*, 203 Ga.App. 389, 417 S.E.2d 340, 341 (1992)(if insured was killed while the aggressor in an assault and he knew or should have known that he might be killed in the altercation, then his death is not accidental); *Pfeifer v. World Service Life Ins. Co.*, 121 Wis.2d 567, 360 N.W.2d 65 (1984)(death results from an accident, under terms of life insurance policy, only if insured did not know or expect actions would result in his or her death); *see generally* Ferdinand S. Tino, Annotation, *Accident Insurance: Death or Injury Intentionally Inflicted by Another as Due to Accident or Accidental Means*, 49 A.L.R.3d 673 (1973 & 1999 Supp.)("[t]he rule seems to be settled that although an insured is intentionally killed or injured by another person, the death or injury is deemed to have been caused by accident ... where it was neither foreseen, expected, nor anticipated by the insured.").

One additional consideration figures in reaching our holding in the present case. This Court has held in the past that when a term of an insurance policy is found to be ambiguous, a court will construe the ambiguous term against the drafter of the contract. *See Cheney v. Bell Nat'l Life Ins. Co.*, 315 Md. 761, 766–67, 556 A.2d 1135, 1138 (1989). In this case, Respondent asserted that no ambiguity exists in the meaning of the term "accident" and we should not construe the term against it. We disagree.

As stated earlier, a contract term is ambiguous if a reasonable person could determine that the contract term is susceptible to at least two different meanings. *See Pacific Indem.*, 302 Md. at 389, 488 A.2d at 489; *Pryseski*, 292 Md. at 198, 438

A.2d at 288. Contrary to its position in the present case, i.e., that the acts which caused Ms. Cole's death should be viewed from the perspective of the actor, Respondent has argued to other appellate courts, in analogous circumstances, that the term "accident" should be defined using the perspective of the insured. *See State Farm Mut. Auto. Ins. Co. v. Wertz*, 540 N.W.2d 636, 639 (S.D.1995)("State Farm's interpretation of the policy is premised on viewing the word "accident" from the insured's perspective."); *State Farm Mut. Auto. Ins. Co. v. Moorer*, 330 S.C. 46, 51–52, 496 S.E.2d 875 (1998). In addition, in yet another appellate court, Respondent appears to have argued contrary to the position it now defends. *See State Farm Mut. Auto. Ins. Co. v. Coon*, 46 Mich.App. 503, 208 N.W.2d 532, 533 (1973)("the very definition of 'accident' submitted by [State Farm] . . . described it as 'an event which under the circumstances is unusual [a]nd not expected to the person to whom it happened' ").

■ We are not convinced by Respondent's assertion that the term "accident" is susceptible to only one meaning, particularly in light of Respondent's apparent practice of offering whatever definitional perspective that serves its purpose du jour. Based on the ambiguity we find in the term "accident," we construe the term "accident" against the drafter of this insurance contract and in favor of the insured.

We hold, under the facts of this case, that Ms. Cole's death was the direct result of an "accident" because her shooting was an unusual and unforeseen event when viewed from her perspective as the insured victim. We reverse the judgment of the Court of Special Appeals and remand the case for further remand to the Circuit Court with directions to enter judgment in favor of the Petitioner on his motion for summary judgment.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AND TO REMAND THIS CASE TO THAT

COURT WITH INSTRUCTIONS TO ENTER JUDGMENT IN FAVOR OF JOHN EDDY JACKSON COLE AS PERSONAL REPRESENTATIVE OF SHARYN COLE'S ESTATE; COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY.