805 A.2d 1141

## INFORMATION SYSTEMS AND NETWORK CORPORATION et al.

v.

## FEDERAL INSURANCE CO.

No. 1874, Sept. Term, 2000.

Court of Special Appeals of Maryland.

Aug. 28, 2002.

458

Norman Singer of McLean, VA (Glenn W.D. Golding, Singer & Associates, P.C., Bethesda, for appellants, Information Systems and Networks Corp., Robert E. Greenberg and Friedlander, Misler, Sloan, Kletzkin & Ochsman, Washington, DC, on the brief for appellant, Port of Oakland, California) for appellants.

Jeffrey R. Schmieler (Lucas F. Webster, Alan B. Neurick and Saunders & Schmieler, P.C. on the brief), Silver Spring, for appellee.

Argued before SALMON, DEBORAH S. EYLER, and THEODORE G. BLOOM (Retired, specially assigned), JJ.

BLOOM, J.

This appeal stems from a complaint filed by appellants, Information Systems and Networks Corporation (ISN) and the Port of Oakland, California, against appellee, Federal Insurance Company (Federal), seeking, *inter alia,* a declaratory judgment that Federal owed a duty to defend and indemnify ISN in an action filed against it in California. On 20 September 2000, the Circuit Court for Montgomery County granted summary judgment in favor of Federal, holding that it had no duty to defend or indemnify ISN under either the Commercial General Liability ("CGL") policy or the Commercial Excess Umbrella policy that Federal had issued to ISN.

The sole issue presented on appeal is whether the circuit court erred in holding that Federal did not have a duty to defend or indemnify ISN under the subject insurance policies.

## FACTUAL BACKGROUND

Although the underlying facts are complex and span a long period of time, only a few of those facts are relevant to our resolution of the issue presented in this appeal. Accordingly, we shall set forth only the basic facts. On 9 November 1999, ISN and its assignee, Port of Oakland, California, filed an amended complaint against Federal, seeking a declaratory judgment that Federal was obligated, pursuant to the CGL and Commercial Excess Umbrella policies, to defend and indemnify ISN in an action filed against ISN in California. ISN also sought damages for breach of contract arising out of Federal's failure to defend and indemnify it in the California action.

The lawsuit filed against ISN in California was a *qui tam* action.[1] Securacom, Inc. filed the *qui tam* action in the

---

1. The phrase *qui tam* comes from the Latin phrase "qui tam pro domino rege quam pro se ipso in hac parte sequitur," meaning one who

United States District Court for the Northern District of California on behalf of itself, the United States of America, and the State of California. Securacom alleged that ISN, ISN's president and chief executive officer, and one of ISN's vice presidents had knowingly submitted false claims to the Board of Port Commissioners of the city of Oakland, California (the Port) in violation of 31 U.S.C. § 3729 *et seq.* and Cal. Govt.Code § 12650 *et seq.*

The alleged false claims related to work ISN was to perform at the Port's Oakland International Airport. In October 1991, ISN was the low bidder for a contract to provide a new automated access control system (AACS) to be installed at the airport. In the *qui tam* suit, Securacom alleged that ISN knowingly and fraudulently concealed material information and affirmatively misrepresented facts to the Port to induce the Port to award the contract to it. Securacom alleged, *inter alia,* that ISN falsely claimed that it had the knowledge, experience, qualifications, and ability to do the job it bid for; misrepresented in its bid that it had a California contractor's license; misrepresented actual costs and entitlements to damages in a proposal for a written change order; and deceived the Port by failing to disclose problems with the security system product that ISN had experienced with two other airport projects. The damages sought in the *qui tam* suit included: delay damages, loss of use of the security system, the need for repair or replacement of the security system, and treble damages as authorized by 31 U.S.C. § 3729(a) and Cal. Govt.Code § 12651(a) (hereinafter referred to collectively as "the false claims acts.)"

The United States and the State of California declined to intervene in the *qui tam* suit. The Port, however, intervened, claiming that ISN knew that a key component of the AACS and application software was defective. The Port sought

---

sues on behalf of the King as well as for himself. Black's Law Dictionary defines a *qui tam* action as one "brought under a statute that allows a private person to sue for a penalty, part of which the government or some specified public institution will receive." Black's Law Dictionary, 1262 (7th ed.1999).

damages equal to the amount of the progress payments made to ISN in response to the false claims, treble damages, a civil penalty of $10,000 for each of five false claims alleged, and costs of the suit.

ISN and the Port settled the Port's claim. Under the terms of the settlement, judgment was entered against ISN in the amount of $1,322,726 in actual damages and $75,000 in attorney's fees. Also pursuant to the terms of the settlement, ISN assigned to the Port its rights under certain insurance policies with respect to the claim, to the extent necessary to secure payment of the judgment. ISN agreed to cooperate with the Port in a direct action against ISN's insurer to collect the balance of the judgment.

Pursuant to the terms of the settlement agreement, ISN and the Port subsequently filed a lawsuit in the Circuit Court for Montgomery County against Federal and the Chubb Corporation d/b/a The Chubb Group of Insurance Companies (Chubb). The claims against Chubb were eventually dismissed. As noted above, ISN and the Port sought a declaratory judgment that Federal was obligated, pursuant to the CGL and Commercial Excess Umbrella policies, to defend and indemnify ISN in the *qui tam* action. ISN and the Port also sought damages for breach of contract arising out of Federal's failure to defend and indemnify it in the *qui tam* action.

The parties filed motions for summary judgment. ISN's motion was based on its assertion that it was entitled, as a matter of law, to a declaratory judgment that the insurance policies provide coverage for the defense and indemnity of ISN with respect to the *qui tam* action. Federal's motion for summary judgment was based on the argument that the *qui tam* action was predicated upon the fact that ISN knowingly defrauded a government entity, and that such claims do not constitute "property damage caused by an occurrence" as required by the provisions of both the CGL and the Commercial Excess Umbrella policies. After hearing oral argument, the circuit court ruled from the bench that Federal was entitled to have summary judgment entered in its favor. The

court determined that the complaint filed in the *qui tam* action contained allegations that ISN had submitted false and fraudulent claims to the Port, and that it involved "fraud perpetrated upon a government entity." The circuit court concluded that the subject insurance policies provide coverage only for "property damage caused by an occurrence," and that none of those elements were present in the *qui tam* action. In its oral ruling, the circuit court denied ISN's motion and granted summary judgment in favor of Federal. This appeal followed.

## STANDARD OF REVIEW

■■■■■ Summary judgment is appropriate when there is no dispute as to any material facts and the moving party is entitled to judgment as a matter of law. Md. Rule 2–501. We review the same information from the record and decide the same issues of law as the trial court. *Nationwide Mut. Ins. Co. v. Scherr*, 101 Md.App. 690, 694–95, 647 A.2d 1297 (1994). "Although all reasonable inferences from the facts are to be considered in the light most favorable to the non-moving party, Maryland courts narrow their focus to those facts that will 'somehow affect the outcome of the case.' " *Warner v. German*, 100 Md.App. 512, 516, 642 A.2d 239 (1994)(quoting *King v. Bankerd*, 303 Md. 98, 111, 492 A.2d 608 (1985)). Ordinarily, we are confined to the basis relied upon by the lower court, and we may not affirm the lower court's decision on the basis of new or different legal theories. *Warner*, 100 Md.App. at 517, 642 A.2d 239. Therefore, in reviewing a trial court's grant of summary judgment, we must determine whether the trial court's ruling was legally correct. *Heat & Power Corp. v. Air Products & Chemicals, Inc.*, 320 Md. 584, 591, 578 A.2d 1202 (1990).

## DISCUSSION

In the circuit court action, each party filed a motion for summary judgment. The parties agreed that there is no genuine dispute as to any material fact. We must determine, therefore, whether Federal was entitled to judgment as a

matter of law. That is, we must determine whether, under the terms of the CGL and Commercial Excess Umbrella policies, Federal had a duty to defend and to indemnify ISN in the *qui tam* action.

In *Mesmer v. Maryland Auto. Ins. Fund,* 353 Md. 241, 725 A.2d 1053 (1999), the Court of Appeals discussed the duty to defend and the duty to indemnify, stating:

> Under the typical liability insurance policy, the insurer has a duty to indemnify the insured, up to the limits of the policy, for the payment of a judgment based on a liability claim which is covered. The insurer also has a duty to defend the insured against a liability claim which is covered or which is potentially covered. The source of both duties is solely the insurance contract. As stated in *Brohawn v. Transamerica Ins. Co.,* 276 Md. 396, 409, 347 A.2d 842, 851 (1975), "the promise to defend the insured, as well as the promise to indemnify, is the consideration received by the insured for payment of the policy premiums."
>
> We have repeatedly indicated that the obligation to defend and the obligation to indemnify are entirely contractual.

*Id.* at 257–58, 725 A.2d 1053.

The obligation of an insurer to defend its insured under a contract provision is determined by the allegations in the tort action. *Brohawn v. Transamerica Ins. Co.,* 276 Md. 396, 407–08, 347 A.2d 842 (1975).

> "If the plaintiffs in the tort suits allege a claim covered by the policy, the insurer has a duty to defend. Even if a tort plaintiff does not allege facts which clearly bring the claim within or without the policy coverage, the insurer still must defend if there is a potentiality that the claim could be covered by the policy."

*Id.* In *St. Paul Fire & Marine Ins. Co. v. Pryseski,* 292 Md. 187, 438 A.2d 282 (1981), the Court of Appeals articulated a two-part inquiry to be used to ascertain when an insurer is under a duty to defend an insured:

In determining whether a liability insurer has a duty to provide its insured with a defense in a tort suit, two types of questions ordinarily must be answered: (1) what is the coverage and what are the defenses under the terms and requirements of the insurance policy? (2) do the allegations in the tort action potentially bring the tort claim within the policy's coverage? The first question focuses upon the language and requirements of the policy, and the second question focuses upon the allegations of the tort suit.

*Id.* at 193, 438 A.2d 282.

 In determining the scope and limitations of the insurance coverage, we look first to the contract language. When interpreting the words of a contract, we seek to give the words their " 'customary, ordinary, and accepted meaning.' " *Cole v. State Farm Mut. Ins. Co.,* 359 Md. 298, 305, 753 A.2d 533 (2000)(quoting *Lloyd E. Mitchell, Inc. v. Maryland Cas. Co.,* 324 Md. 44, 56, 595 A.2d 469 (1991)).

If the meaning of the terms of the insurance policy are plain and unambiguous, we will determine the meaning of the terms of the contract as a matter of law. If the terms are ambiguous, however, we will look to evidence from extrinsic sources such as dictionaries or an interpretation of the term employed by one of the parties before the dispute arose. A term of a contract is ambiguous if, to a reasonably prudent person, the term is susceptible to more than one meaning.

*Cole,* 359 Md. at 305–06, 753 A.2d 533 (citations omitted).

With these standards in mind, we turn first to the insurance contracts at issue in this case. Both the CGL policy and the Commercial Excess Umbrella policy basically cover the same losses, are subject to the same exclusions, and are governed by the same definitions. The Commercial Excess Umbrella policy merely obligates the insurer to pay damages in excess of those payable under the CGL policy. Both policies provide coverage for "bodily injury or property damage caused by an occurrence; or personal injury or advertising injury." "Property damage" is defined as "1. physical injury to tangible property including all resulting loss of use of that property;

or, 2. loss of use of tangible property that is not physically injured."

■ When we look at the Port's claim for damages under the California False Claims Act, which resulted in a judgment by virtue of a settlement, it is clear that the claim was not for "property damage" in any sense of those words. The Port sought damages resulting from the allegation that ISN had knowingly provided false, misleading, and fraudulent information in order to obtain the contract. The Port did not complain of any damage to its property. Rather, it sought damages for the costs of the forfeiture of the AACS system, the money it had paid to ISN under the falsely obtained contract, delay damages, and penalties. The basis for the damages and penalties sought was ISN's knowing and fraudulent presentation of false claims to the Port, not for damages to wires and failed component parts of the AACS system. Consequently, Federal had no duty to defend the *qui tam* action and, certainly, no obligation to indemnify ISN or its assignee.

■ As to the original *qui tam* action brought by Securacom in the name of the United States and the State of California, that claim was abandoned; therefore, the only issue to be resolved is whether Federal had any duty to defend that action before it was dismissed. We note, preliminarily, that, on its face, the action on behalf of the United States and the State of California for false claims made in submitting claims for payment does not constitute a property damage claim. Appellant argues that the loss of the use of the AACS system and the need to replace it constitute a loss of the use of property, which constitutes property damage. Even if Securacom's claim could be construed as one for damages to property, it is clear that it would not be covered under the insurance policies.

The CGL policy contains an exclusion that pertains to damage to the property of others. It provides that the insurance does not apply to:

DAMAGE TO PROPERTY OF OTHERS (CARE, CUSTO-
DY OR CONTROL)

property damage to:

\* \* \*

4. that particular part of any property that must be re-
stored, repaired or replaced because your work was incor-
rectly performed on it.

The insurance policy further excludes coverage for:

PRODUCT RECALL

damages claimed for any loss, cost, or expense incurred by
you or others for the loss of use, withdrawal, recall, inspec-
tion, repair, replacement, adjustment, removal or disposal
of:

1. your product;

2. your work; or

3. impaired property;

if such product, work, or property is withdrawn or recalled
from the market or from use by any person or organization
because of a known or suspected defect, deficiency, inade-
quacy, or dangerous condition in it.

These exclusions make clear that there is no coverage for any
of the claims made in the *qui tam* action; therefore, we find
no error in the circuit court's conclusion that "[c]ontractual
nonperformance does not equate to property damage, as that
term is defined in the policy."

 Nevertheless, the summary judgment granted by
the circuit court must be vacated. The Court of Appeals has
stated many times that, "when a declaratory judgment action
is brought, and the controversy is appropriate for resolution
by declaratory judgment, 'the trial court must render a declar-
atory judgment.'" *Harford Mut. Ins. Co. v. Woodfin Equities
Corp.*, 344 Md. 399, 414, 687 A.2d 652 (1997)(quoting *Christ by
Christ v. Maryland Dep't of Natural Res.*, 335 Md. 427, 435,
644 A.2d 34 (1994)). In cases in which a party requests a
declaratory judgment, the trial court may not dispose of the
case simply with an oral ruling and a grant of judgment in

favor of the prevailing party. *Id.* Recently, in *Allstate Ins. Co. v. State Farm Mut. Auto. Ins. Co.,* 363 Md. 106, 767 A.2d 831 (2001), the Court of Appeals commented upon this issue. Judge Wilner, writing for the Court, noted:

> Nor, since the 1997 amendment to Maryland Rule 2–601(a), is it permissible for the declaratory judgment to be part of a memorandum. That rule requires that "[e]ach judgment shall be set forth on a separate document." When entering a declaratory judgment, the court must, in a separate document, state in writing its declaration of the rights of the parties, along with any other order that is intended to be part of the judgment. Although the judgment may recite that it is based on the reasons set forth in an accompanying memorandum, the terms of the declaratory judgment itself must be set forth separately. Incorporating by reference an earlier oral ruling is not sufficient, as no one would be able to discern the actual declaration of rights from the document posing as the judgment. This is not just a matter of complying with a hyper-technical rule. The requirement that the court enter its declaration in writing is for the purpose of giving the parties and the public fair notice of what the court has determined.

*Allstate,* 363 Md. at 117, n. 1, 767 A.2d 831 (2001). Accordingly, we must vacate the judgment and remand this case to the Circuit Court for Montgomery County for the entry of a written declaratory judgment in conformity with this opinion.

**JUDGMENT VACATED.**

**CASE REMANDED TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY FOR ENTRY OF A WRITTEN DECLARATORY JUDGMENT IN CONFORMITY WITH THIS OPINION.**

**COSTS TO BE PAID BY APPELLANTS.**