**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 14-1682**

_____

EMCOR GROUP, INC.; THE POOLE AND KENT CORPORATION; FORTI/POOLE AND KENT LLC; MONUMENTAL INVESTMENT CORPORATION,

            Plaintiffs - Appellants,

        v.

GREAT AMERICAN INSURANCE COMPANY,

            Defendant - Appellee.

_____

Appeal from the United States District Court for the District of Maryland, at Baltimore.  J. Frederick Motz, Senior District Judge.  (1:12-cv-00142-JFM)

_____

Argued:  December 9, 2015          Decided:  January 26, 2016

_____

Before WILKINSON, KEENAN, and HARRIS, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**ARGUED:** Bernard London, LONDON FISCHER LLP, New York, New York, for Appellants.  Michael A. Graziano, ECKERT SEAMANS CHERIN & MELLOTT LLC, Washington, D.C., for Appellee.  **ON BRIEF:** James Walsh, James T.H. Deaver, LONDON FISCHER LLP, New York, New York, for Appellants.  F. Joseph Nealon, ECKERT SEAMANS CHERIN & MELLOTT LLC, Washington, D.C., for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

EMCOR Group, Inc. and three of its subsidiaries (collectively, EMCOR) brought this action against the Great American Insurance Company (Great American), which provided EMCOR with three successive commercial crime insurance policies between December 1, 2002 and December 1, 2005. The three policies each provided coverage for certain losses sustained because of employees' fraudulent acts. EMCOR contends that the policy in effect from December 1, 2004 to December 1, 2005 (the 2004 policy), obligated Great American to provide coverage for EMCOR employees' fraudulent acts that occurred between December 1, 1999 and December 1, 2003. The district court concluded that the unambiguous language of the 2004 policy obligated Great American only to provide coverage for losses sustained after December 1, 2003. Because we agree that the language of the 2004 policy is unambiguous, we affirm.

I.

The facts at issue are not disputed. At all relevant times, EMCOR maintained successive commercial crime insurance policies, which provided coverage for losses sustained as a result of "employee dishonesty." From December 1, 1999 until December 1, 2002, those policies were provided to EMCOR by

2

Factory Mutual Insurance Company, which is not affiliated with Great American.

As noted above, from December 1, 2002 until December 1, 2005, Great American provided EMCOR with three successive crime insurance policies. At the time one Great American policy became effective, the immediately prior policy was terminated. At issue in the present appeal is the scope of coverage afforded under the 2004 policy.

The 2004 policy provided that the applicable "policy period" began on December 1, 2004, and ended on December 1, 2005. The policy also stated that, by accepting the terms of the 2004 policy, EMCOR agreed that the "prior [p]olicy" in effect from December 1, 2003 to December 1, 2004 (the 2003 policy), was cancelled. The 2004 policy obligated Great American to pay for the "loss of, and damage to," any money, securities, and property resulting directly from "employee dishonesty." That coverage provision was limited by Condition 14, which stated that Great American would pay "only for loss that [EMCOR] sustain[s] through acts committed or events occurring during the Policy Period" of December 1, 2004 to December 1, 2005.

Condition 14, however, was "subject to" Condition 10, which extended coverage as follows:

10. Loss Sustained During Prior Insurance

3

a. If you, or any predecessor in interest, sustained loss <u>during the period of any prior insurance</u> that you . . . could have recovered under that insurance except that the time within which to discover loss had expired, <u>we will pay for it under this insurance, provided</u>:

(1) <u>this insurance became effective at the time of cancellation or termination of the prior insurance</u>; and

(2) this loss would have been covered by this insurance had it been in effect when the acts or events causing the loss were committed or occurred.

(Emphasis added.)

In 2005, EMCOR notified Great American of losses of more than $10 million resulting from fraudulent acts committed by EMCOR employees between December 1, 1999 and December 1, 2003.[1] EMCOR submitted a claim under the 2004 policy for its losses. Great American refused to pay the claim on the ground that the claimed losses occurred outside the scope of coverage provided by the 2004 policy. EMCOR filed suit, alleging that Great American breached its coverage obligations under the 2004 policy.

Both parties filed partial motions for summary judgment, asking the district court to determine the extent of the 2004

---

[1] EMCOR originally sought coverage for fraudulent acts committed up to December 1, 2005. In a separate decision, the district court determined that EMCOR lacked an evidentiary basis for its claim that it suffered "loss" between December 1, 2003 and December 1, 2005, and granted partial summary judgment in favor of Great American. EMCOR does not appeal that decision.

policy coverage. Great American maintained that it only was required to cover losses arising from acts that occurred during the 2004 policy period or the 2003 policy period, to include only fraudulent acts that occurred after December 1, 2003. EMCOR argued that Great American was obliged to cover losses occurring as early as 1999, when Factory Mutual provided EMCOR with commercial crime insurance. The parties' arguments were based on their differing interpretations of the terms "this insurance" and "any prior insurance" set forth in Condition 10.

In determining the meaning of those terms, the district court relied on the language used throughout the entire 2004 policy. In particular, although Condition 10 initially provided that Great American would pay for loss sustained during "any prior insurance," that obligation immediately was limited by the proviso that payment would be made only if "this insurance became effective at the time of cancellation or termination of the prior insurance." (Emphasis added.) Furthermore, under the heading "Cancellation of Prior Insurance" in the declarations page, the 2004 policy provided: "By acceptance of this Coverage Part, you give us notice cancelling prior Policy or Bond Nos. CRP 524-49-86-01 [the 2003 policy], the cancellation to be effective at the time [the 2004 policy] becomes effective."

Reading those provisions together, the district court concluded that the plain language of the 2004 policy identified

5

the 2003 policy as the "prior insurance" referenced in Condition 10. Accordingly, the district court held that the language in Condition 10 requiring Great American to pay for losses sustained under "any prior insurance" unambiguously referred only to the losses EMCOR may have sustained during the 2003 policy period, from December 1, 2003 to December 1, 2004. The district court therefore granted partial summary judgment in favor of Great American. This appeal followed.

## II.

On appeal, EMCOR argues that the phrase "any prior insurance" in Condition 10 unambiguously refers to all prior commercial crime insurance policies that EMCOR retained, even those provided by Factory Mutual. EMCOR submits that the only limitation on Great American's coverage for losses sustained because of "employee dishonesty" was that EMCOR maintained continuous commercial crime insurance coverage, so that one policy period began immediately upon the termination of the previous policy period. In EMCOR's view, Great American therefore is obligated to provide coverage for all of EMCOR's losses from acts that occurred as early as 1999, because EMCOR retained continuous commercial crime insurance from 1999 through the 2004 policy period.

6

EMCOR argues alternatively that the meaning of "any prior insurance" is ambiguous and therefore this Court should review extrinsic evidence and resolve the ambiguity against Great American as the contract drafter. We disagree with EMCOR's arguments.

We review a district court's grant of a motion for summary judgment de novo. Millenium Inorganic Chem. Ltd. v. Nat'l Fire Ins. Co. of Pittsburgh, Pa., 744 F.3d 279, 285 (4th Cir. 2014). In interpreting insurance contracts, we apply the same principles applicable to any other contract. Mitchell v. AARP Life Ins. Program, N.Y. Life Ins. Co., 779 A.2d 1061, 1069 (Md. 2001).[2] As with any other contract, we begin with the policy's plain language. MAMSI Life & Health Ins. Co. v. Callaway, 825 A.2d 995, 1005 (Md. 2003). Courts "analyze the plain language . . . according to the words and phrases in their ordinary and accepted meanings as defined by what a reasonably prudent lay person would understand them to mean." Kendall v. Nationwide Ins. Co., 702 A.2d 767, 771 (Md. 1997).

---

[2] EMCOR argues for the first time on appeal that Connecticut law, rather than the Maryland law applied by the district court, applies to our interpretation of the 2004 policy. We will not consider this newly introduced argument. See Muth v. United States, 1 F.3d 246, 250 (4th Cir. 1993) ("As this court has repeatedly held, issues raised for the first time on appeal generally will not be considered."). Moreover, our decision would be the same under either Maryland or Connecticut law.

7

When the language of an insurance contract is unambiguous, a court must enforce its terms. Megonnell v. United Serv. Auto. Ass'n, 796 A.2d 758, 772 (Md. 2002). "A contract is not ambiguous merely because the parties do not agree as to its meaning." Floyd v. Mayor & City Council of Balt., 946 A.2d 15, 48 (Md. Ct. Spec. App. 2008). Rather, an insurance policy term only is "ambiguous if, to a reasonably prudent person, the term is susceptible to more than one meaning." Cole v. State Farm Mut. Ins. Co., 753 A.2d 533, 537 (Md. 2000).

We agree with the district court that the language at issue in the 2004 policy is unambiguous. Condition 10 obligated Great American to provide coverage for losses based on acts occurring during "any prior insurance" period, but only if "this insurance became effective at the time of cancellation or termination of the prior insurance." Nothing in that limiting language suggests that "prior insurance" means any and all commercial crime insurance EMCOR held for all time, regardless which insurer provided coverage or when such coverage was provided. Nor can the limiting clause in Condition 10 be read to suggest that "this insurance" refers collectively to all of Great American's insurance policies, as opposed solely to the 2004 policy. The declarations page of the 2004 policy makes clear that the 2003 policy was the only "prior insurance" cancelled at the time that the 2004 insurance became effective. Accordingly,

8

the language of Condition 10 regarding "prior insurance" unambiguously refers only to the 2003 policy, while the term "this insurance" refers only to the 2004 policy.

Our conclusion is not altered by the general dictionary definitions advanced by EMCOR of the term "insurance" as the "state of being insured," such that the use of "this insurance" in Condition 10 would include all commercial crime insurance policies EMCOR has had. Within the four corners of the 2004 policy, the phrase "this insurance" unambiguously refers only to the 2004 policy. We will not read into the contract EMCOR's tortured interpretation of the 2004 policy language. Additionally, because we conclude that the language of the 2004 policy is unambiguous, we do not address EMCOR's alternative arguments regarding the proper approach for resolving contract ambiguity.

## III.

We hold that the 2004 policy extended coverage only to losses sustained as a result of fraudulent conduct occurring during the 2003 and 2004 policy periods. We therefore affirm the judgment of the district court.

<u>AFFIRMED</u>