UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

NVR, INCORPORATED, d/b/a NVR
Homes, Incorporated, d/b/a Ryan
Homes,
<em>Plaintiff-Appellant,</em>

v.

JUST TEMPS, INCORPORATED,
<em>Defendant-Appellee.</em>

No. 01-2029

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
J. Frederick Motz, District Judge.
(CA-00-2991-JFM)

Argued: January 23, 2002

Decided: March 11, 2002

Before NIEMEYER and TRAXLER, Circuit Judges, and
Cynthia Holcomb HALL, Senior Circuit Judge of the
United States Court of Appeals for the Ninth Circuit,
sitting by designation.

Reversed and remanded by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Brian L. Lincicome, COZEN O'CONNOR, Philadelphia,
Pennsylvania, for Appellant. Stacey Ann Moffet, ECCLESTON &
WOLF, P.C., Baltimore, Maryland, for Appellee. **ON BRIEF:** Jason

G. Bates, COZEN O'CONNOR, Philadelphia, Pennsylvania, for Appellant. Edward J. Hutchins, Jr., ECCLESTON & WOLF, P.C., Baltimore, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

This action arises out of an explosion and fire that substantially damaged real property owned by NVR, Inc. ("NVR"). At the time of the incident, the property ("the Durham Manor Project"), consisting of three multi-unit residential buildings, was under construction and near completion. The explosion happened when Willie Everett, a temporary employee provided to NVR by Just Temps, released propane from a partially-filled tank near open-flame burners that were being used to dry construction materials. The gas ignited when it came into contact with the open flame and the ensuing fire caused considerable damage to the building. NVR filed an action in federal district court seeking to recover damages from Just Temps on the theory that Just Temps was vicariously liable for Everett's alleged negligence under respondeat superior principles.* Just Temps moved for summary judgment, arguing that at the time of the incident Everett had been the "borrowed servant" of NVR, and that Just Temps therefore was not vicariously liable for Everett's acts. The district court agreed and granted Just Temps' summary judgment motion. NVR timely appealed, and we now reverse and remand for further proceedings.

*NVR actually advanced several claims, but it only appeals that part of the district court's ruling that granted summary judgment to Just Temps on NVR's claim of vicarious liability.

I.

Just Temps is in the business of supplying temporary laborers for construction and warehouse work. NVR, a developer and builder of single and multi-family homes has, on occasion, utilized the services of temporary labor providers, including Just Temps. NVR requires all such companies to enter into a standard contract to govern the parties' relationship. Such a contract was in effect at the time of the explosion that damaged the Durham Manor Project. Of particular relevance to the instant controversy, the contract contained an indemnification provision whereby Just Temps "agree[d] to indemnify NVR . . . for . . . any and all liabilities, losses, and costs . . . regardless of cause, arising from or connected with . . . any alleged personal injury, death, or property damage arising from or connected with the Work" that Just Temps laborers were performing for NVR. J.A. 17.

Prior to the explosion that damaged the Durham Manor Project, NVR periodically used temporary laborers supplied by Just Temps. When placing an order for labor, NVR usually advised Just Temps of the particular tasks involved and the amount of weight the temporary laborers would be required to lift. One of the tasks typically assigned to such laborers was the moving of empty or partially-filled 100-pound propane cylinders. NVR had several such cylinders at the Durham Manor Project to fuel open-flame heaters called "salamanders," which are used to dry newly taped and spackled drywall. At the time of the explosion and fire, two salamanders were in operation, one on the ground floor and the other on the third floor. The salamanders were connected by long rubber hoses to two 100-pound propane cylinders positioned considerable distances away from the operating heaters.

Everett had not worked before at the Durham Manor Project. When he arrived there, he reported to Kenneth Dudley, NVR's on-site project supervisor, who initially assigned Everett and a co-worker from Just Temps the task of moving bricks. When that task was completed, Dudley asked the workers to move four partially-filled propane cylinders from behind the building to the parking area on the opposite side of the building, where the cylinders would be refilled by NVR's propane gas supplier.

Shortly after giving that assignment, Dudley left the Durham Manor Project to check on another nearby construction project. Everett and his co-worker began moving the cylinders by rolling them upright through the building. Josef Kokes, a masonry subcontractor, heard a loud hissing noise coming from within the building and asked Everett's co-worker about the noise. The co-worker replied that Everett was in the building "releasing gas because [the cylinder] got too heavy for him to carry." J.A. 182. An explosion then occurred and fire spread rapidly throughout the building. Michael Newberry, a certified fire investigator, concluded that the explosion and fire were the result of Everett's release of the propane gas.

The district court resolved the issue of which of the two companies, NVR or Just Temps, bore responsibility for the damage by reference to the borrowed servant doctrine. Focusing largely on the degree of control that NVR exercised over Everett while he worked at the Durham Manor Project, the district court held that Everett was the borrowed servant of NVR and that NVR, not Just Temps, was therefore responsible for Everett's negligent acts. On appeal, NVR argues that the district court should not have employed a borrowed servant analysis because, regardless of Everett's status under the borrowed servant doctrine, the parties allocated the risk of Everett's negligent acts to Just Temps by contract.

## II.

The borrowed servant doctrine arose as a means of determining which of two employers, the general employer or the borrowing employer, should be held liable for the tortious acts of an employee whose conduct injured a third party and who, although in the general employ of the former, was performing a task for the latter. *See Standard Oil Co. v. Anderson*, 212 U.S. 215, 220 (1909) ("[W]hen . . . an attempt is made to impose upon the master the liability for [the servant's tortious acts], it sometimes becomes necessary to inquire who was the master at the very time of the negligent act or omission."). The Supreme Court summed up the doctrine as follows: "One may be in the general service of another, and, nevertheless, with respect to particular work, may be transferred . . . to the service of a third person, so that he becomes the servant of that person, with all the legal consequences of the new relation." *Id.*

Although the district court analyzed this case under those principles, we agree with NVR that application of the borrowed servant doctrine does not resolve the ultimate issue presented. Under Maryland law, in cases like this one between a general employer and a borrowing employer, "whatever the status of an employee under the 'borrowed servant' doctrine, the parties may allocate between themselves the risk of any loss resulting from the employee's negligent acts." *Sea Land Indus., Inc. v. General Ship Repair Corp.*, 530 F. Supp. 550, 563 (D. Md. 1982) (discussing *Hercules Powder Co. v. Harry T. Campbell Sons Co.*, 144 A. 510 (Md. 1928)). Thus, if the parties contractually agreed that one or the other of them should bear the risk of a particular employee's negligent acts, that employee's status under the borrowed servant doctrine is immaterial.

Here, the contract clearly allocated the risk of Everett's negligence to Just Temps. Specifically, Just Temps expressly agreed to indemnify NVR for "all liabilities, losses, and costs . . . arising from or connected with . . . any alleged personal injury, death, or property damage arising from or connected with the Work" that Everett was performing for NVR. J.A. 17. The indemnification provision made clear, however, that Just Temps was not required to indemnify NVR for "any liability attributable solely to the negligence of NVR or its affiliates," J.A. 17, a term that NVR presumably placed in its standard form contract to ensure that the risk-shifting indemnification provision comported with Maryland law. *See Bethlehem Steel Corp. v. G.C. Zarnas & Co.*, 498 A.2d 605, 610 (Md. 1985) (holding that clauses in construction contracts providing for indemnity against the results of one's sole negligence are void as against public policy). Essentially then, by virtue of the indemnification clause, Just Temps contractually agreed to bear the financial burden of any damage caused in whole or in part by any Just Temps laborer, including Everett.

Just Temps attempts to support the district court's decision to grant it summary judgment by pointing to several cases such as *White v. Bethlehem Steel Corp.*, 222 F.3d 146 (4th Cir. 2000), and *Whitehead v. Safway Steel Prods., Inc.*, 497 A.2d 803 (Md. 1985). We find Just Temps' reliance on these cases misplaced. All of the cases cited by Just Temps involve disputes between an employee and one of the employers. None of the cases involve a dispute between a general

employer and a borrowing employer in which the employers contrac-tually allocated the risk of the loss that materialized. Thus, the cases relied on by Just Temps are inapposite.

Just Temps also argues that because the district court correctly found that NVR waived the applicability of certain provisions of the contract (none of which are an issue in this appeal), it necessarily fol-lows that NVR waived the applicability of the risk-shifting provi-sions. We disagree. Waiver is "the intentional relinquishment of a known right or such conduct as warrants an inference of the relin-quishment of that right; waiver may result from an express agreement or be inferred from circumstances." *One Twenty Realty Co. v. Baer*, 272 A.2d 377, 382 (Md. 1971). There is no evidence in the record that NVR ever intentionally relinquished its right to enforce the provisions of the contract that allocate the risk of Just Temps' laborers' negligent acts to Just Temps. Thus, the waiver argument is unavailing.

## III.

Accordingly, the district court's order granting summary judgment in favor of Just Temps is reversed, and this matter is remanded for further proceedings consistent with this opinion.

*REVERSED AND REMANDED*