**ALPHA CONSTRUCTION AND ENGINEERING CORP., et al., Plaintiffs,**

v.

**INSURANCE COMPANY OF the STATE OF PENNSYLVANIA, Defendant.**

**Civil No. JFM 06–2352.**

United States District Court, D. Maryland.

March 9, 2009.

Robert L. Ferguson, Jr., Gregory P. Currey, Michele Zahner Blumenfeld, Ferguson Schetelich and Ballew PA, Baltimore, MD, Patrick James Attridge, King and Attridge, Rockville, MD, for Plaintiffs.

Lawrence Klein, Sedgwick Detert Moran and Arnold LLP, New York, NY, Stacey Ann Moffet, Eccleston and Wolf PC, Hanover, MD, for Defendant.

## *OPINION*

J. FREDERICK MOTZ, District Judge.

This insurance coverage dispute arises from a construction site accident that occurred on January 13, 2003 at the Maryland Transit Administration's ("MTA") Rogers Avenue Metro Station. The pedestrian injured in the accident, Mary Griffin ("Griffin"), filed a personal injury lawsuit against several defendants in the Circuit Court for Baltimore City, Case No. 24–C–05–007319 OT, seeking damages for her injuries ("Griffin suit" or "underlying suit"). (Pls.' Ex. 9.) The defendants in that case included two of the plaintiffs in this action, Alpha Construction and Engineering Corporation ("Alpha") and Rummel, Klepper & Kahl, LLP ("RKK"), as well as the MTA.[1] (*Id.*) Alpha, RKK, United States Fidelity and Guaranty Company ("USFG"), and The American Insurance Company ("American") (collectively "Plaintiffs"), have filed this suit against Defendant, the Insurance Company of the State of Pennsylvania ("ICSP" or "Defendant"), seeking a declaratory judgment that Alpha and RKK, or alternatively, two of their employees, were insureds under a commercial general liability policy that ICSP issued on behalf of MTA. (2d Am. Compl. ¶¶ 38.B, 45.B.) Plaintiffs seek a declaration that Defendant owed Alpha and RKK a duty to defend in the underlying suit and a duty to indemnify for damages payable and settlement contributions made by Alpha and RKK, and/or on their behalf, with respect to the suit. (*Id.* ¶¶ 38.C, 40.C.) Defendant counter-claimed against Alpha that it is entitled to contribution or indemnity from Alpha for the costs it incurred in defending MTA in the underlying suit and paying $400,000 to settle that action. (Def.'s Answer to Pls.' 2d Am. Compl. and Counterclaim ["Def.'s Answer"] ¶ 92.) Now pending before me are Plaintiffs' motion for summary judgment and Defendant's cross-motion for summary judgment. The issues have been fully briefed and no hearing is necessary. Local Rule 105.6.

For the following reasons, Plaintiffs' motion for summary judgment is DENIED, and Defendant's cross-motion for summary judgment is GRANTED.

---

1. The other defendants in the Griffin suit were Maple Construction Company and Codd Fabricators and Boiler Company, Inc. (Pls.' Ex. 9.)

## I.

The facts of this case are largely undisputed. On or about October 29, 2001, MTA entered into a "Contract Agreement for Metro Aerial Stations Escalator Weatherization" ("Weatherization Project") with Maple Construction Company ("Maple"), Contract No. T–0124–0340 (the "Maple Contract"). (Def.'s Mem. in Opp'n to Pls.' Mot. for Summ. J. and in Supp. of Def.'s Cross–Mot. for Summ. J. ["Def.'s Opp'n"] 4.) Incorporated into the Maple Contract was a Contract Specification Book, which provided that MTA would utilize an Owner Controlled Insurance Program ("OCIP") for the Weatherization Project. (Def.'s Ex. A, at I–1.) Owner controlled insurance programs, also known as wrap-up insurance programs, "provide insurance of an entire construction project against risks of loss arising from property damage or personal injury." (Pls.' Mem. in Supp. of Their Second Mot. for Summ. J. ["Pls.' Mem."] 18) (*quoting* Stein on Contract Law § 13.08 Wrap–Up Insurance Programs (1994).) The Maple Contract stated that "[t]he MTA OCIP will provide General Liability, Workers' Compensation, and Excess Liability coverage for contractors and subcontractors while performing Work on the project site." (Def.'s Ex. A, at I–1.) MTA secured its general liability insurance for OCIP from ICSP. (Lockman Dep., Def.'s Ex. P, at 37:18–39:5.) ICSP issued Commercial General Liability Policy No. GL 933–09–60 ("ICSP Policy" or "Policy") to MTA for the period covering April 15, 2002 to April 15, 2003. (Def.'s Opp'n 14.)

On January 13, 2003, MTA received a report of a safety violation at its Rogers Avenue Metro Station, which was undergoing construction as part of the Weatherization Project. (Pls.' Mem. 5–6.) Two inspectors who were working for MTA,[2] Michael Gray ("Gray") and Anthony Combs ("Combs"), were dispatched to the site. (*Id.* 6–7.) Gray was working for MTA pursuant to a contract between Alpha and MTA (the "Alpha Contract") in which Alpha, acting as a "Consultant," provided MTA with "on-call construction management and inspection personnel" for "miscellaneous ancillary projects." (*Id.* 8; Def.'s Ex. G, at 1.) Combs was supplied to MTA pursuant to a similar contract between MTA and RKK (the "RKK Contract") in which RKK was to provide MTA with "professional construction survey and inspection services for MTA construction projects." (Pls.' Mem. 8; Def.'s Ex. F, at 1.) Upon arriving at the site, Gray saw a large piece of plywood perched above the escalator, and while he was in the process of examining it, the board dislodged and fell, striking Griffin in the head and back. (Pls.' Mem. 7.)

The Griffin suit was settled in January 2007. (Def.'s Opp'n 19.) As part of the settlement, ICSP paid $400,000 on behalf of MTA, and Alpha's insurer, USFG, paid $342,000 in addition to a $58,000 payment it had made previously to Griffin.[3] (Def.'s Opp'n 19.) In a separate settlement funding agreement, Alpha, RKK, MTA, ICSP, USFG, and American reserved all rights to seek contribution or indemnification from each other.[4] (*Id.*; Def.'s Ex. Z, at 4.)

Plaintiffs filed suit in this action on or about September 11, 2006 and shortly

---

**2.** The nature of the employment relationship between Gray and Combs and MTA is in dispute and will be addressed in Part III.B.

**3.** American, RKK's insurer, also made a settlement commitment of $50,000 to Griffin. (Def.'s Ex. Z, at 3.)

**4.** In consideration of the settlement agreement made by American and RKK, Maple, Alpha, ICSP, and USFG agreed to release Combs, RKK, and American "from any and all claims ... allegedly resulting from ... the Accident." (Def.'s Ex. Z, at 4–5.)

thereafter moved for summary judgment. Defendant cross-moved for summary judgment, and I heard oral argument on February 2, 2007. I denied both parties' summary judgment motions to allow for further discovery. Plaintiffs have amended their complaint, and the parties have again moved for summary judgment.

## II.

This Court has jurisdiction in this action under 28 U.S.C. § 1332, as there is complete diversity between the parties[5] and the amount in controversy exceeds $75,000. Venue is proper in this District under 28 U.S.C. § 1391(a), as a substantial part of the events giving rise to the Complaint arose in this District.

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A material fact is one that may affect the outcome of the suit. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "When cross-motions for summary judgment are submitted to a district court, each motion must be considered individually, and the facts relevant to each must be viewed in the light most favorable to the non-movant." *Mellen v. Bunting*, 327 F.3d 355, 363 (4th Cir.2003).

The contracts in dispute in this case were made in Maryland and, accordingly, Maryland substantive law governs. *See,* e.g., *Allstate Ins. Co. v. Hart*, 327 Md. 526, 611 A.2d 100, 101 (1992).

When interpreting the meaning of an insurance policy, Maryland courts "construe the instrument as a whole to determine the intention of the parties." *Clendenin Bros., Inc. v. U.S. Fire Ins. Co.*, 390 Md. 449, 889 A.2d 387, 393 (2006) (*citing Cheney v. Bell Nat'l Life Ins. Co.*, 315 Md. 761, 556 A.2d 1135, 1138 (1989)). Courts will look first to the contract language employed by the parties to determine the scope and limitations of the insurance coverage. *Id.* (*quoting Cole v. State Farm Mut. Ins. Co.*, 359 Md. 298, 753 A.2d 533, 537 (2000)). The court is to give a term within the contract its "usual, ordinary and accepted meaning unless there is evidence that the parties intended to employ it in a special or technical sense." *Id.* (citations omitted). Maryland courts will examine "the character of the contract, its purpose, and the facts and circumstances of the parties at the time of execution." *Id.* (*quoting Pacific Indem. Co. v. Interstate Fire & Cas. Co.*, 302 Md. 383, 488 A.2d 486, 488 (1985)).

If the terms used in the insurance policy are unambiguous, the court will determine the meaning of the terms of the contract as a matter of law; however, if the language is ambiguous, extrinsic evidence may be consulted. *Id.* (citations omitted). A term of a contract is ambiguous "if, to a reasonably prudent person, the term is susceptible to more than one meaning." *Id.* (*citing Cole*, 753 A.2d at 537). Summary judgment is appropriate

---

**5.** Plaintiff Alpha is a corporation organized under the laws of Maryland, with its principal place of business in Maryland. (2d Am. Compl. ¶ 1.) Plaintiff RKK is a Maryland limited liability partnership with its principal place of business in Maryland. (*Id.* ¶ 2.) Plaintiff USFG is a corporation organized under the laws of Maryland with its principal place of business in Maryland. (*Id.* ¶ 3.) Plaintiff American is a corporation organized under the laws of Nebraska with its principal place of business in California. (*Id.* ¶ 4.) Defendant ICSP is a corporation organized under the laws of Pennsylvania with its principal place of business in New York. (*Id.* ¶ 5.)

when the contract in question is unambiguous or when an ambiguity can be resolved by reference to extrinsic evidence. *Washington Met. Area Transit Auth. v. Potomac Inv. Props., Inc.*, 476 F.3d 231, 235 (4th Cir.2007).

### III.

Plaintiffs put forward two arguments to support their motion for summary judgment. First, Plaintiffs argue that Alpha and RKK are "insureds" under the ICSP Policy. (Pls.' Mem. 5.) Second, Plaintiffs argue that even if Alpha and RKK are not covered by the ICSP Policy, Gray and Combs are insureds under the Policy because Gray and Combs were leased by Plaintiffs to MTA at the time of the Griffin incident. (*Id.* 4–5.)

### A.

The terms of the ICSP Policy demonstrate that the Policy does not provide coverage to Alpha and RKK.

Plaintiffs argue that Alpha and RKK are included within the Policy's definition of "Named Insured," which includes "[a]ll contractors, all tiers of subcontractors, each separate contractor of [MTA], others to whom [MTA] Contracts to furnish insurance under the insurance program" for the Weatherization Project. (Pls.' Mem. 27–28; ICSP Policy, Def.'s Ex. O, Endorsement MS # 00001.) Plaintiffs describe Alpha and RKK as "contractors," "separate contractors of [MTA]," or, alternatively, "others to whom [MTA] Contracts to furnish insurance...." (Pls.' Mem. 28–30.)

Alpha and RKK might appear to be insureds under the Policy's definition of "Named Insured"; however, they are explicitly excluded from coverage by Endorsement MS # 00006 of the Policy. The Endorsement provides that "coverage for 'Named Insured(s)' shall be automatically effected based upon issuance of a workers compensation policy as afforded by the wrap-up program/owner controlled insurance program." (ICSP Policy, Def.'s Ex. O, Endorsement MS # 00006.) The Endorsement also states that the Policy "does not apply to any of the following as an insured: ... [e]xcept as respects to any contractor or subcontractor who will have employees engaged in work at the project hereof who are not provided workers compensation and employers liability coverage under the owner provided insurance program, unless specifically endorsed to the policy." (*Id.*) Although this provision is not artfully worded, it is included among provisions which explicitly list those entities and individuals who are not covered under the Policy.[6] (*Id.*) Its import is clear: those contractors or subcontractors who are not provided workers' compensation and employer's liability coverage under OCIP are not insured under the ICSP Policy. Thus, if Alpha and RKK were not provided workers' compensation and employer's liability coverage under OCIP, they were not insured under the ICSP Policy.

Plaintiffs present no evidence that Alpha and RKK were provided any coverage under OCIP. In fact, the record evidence indicates quite the opposite. Catharine Jones ("Jones"), MTA's project manager of OCIP, testified in her deposition that neither Alpha nor RKK was ever covered under OCIP. (Jones Dep., Def.'s Ex. Q, at 36:10–11, 56:11–13.) Jones identified at her deposition a spreadsheet dated March 31, 2007, and kept by MTA's broker, listing all of the companies that were ever enrolled in the OCIP starting

---

**6.** Testimony from Thomas Morrissey of AIG Risk Management Group, ICSP's parent company, confirms that the portion of the Endorsement in which the provision appears is "a reaffirmation of what we're not covering." (Morrissey Dep., Def.'s Ex. T, at 88:14–15.)

in 2000. (*Id.* 14:5–12.) Alpha and RKK do not appear on the list. (*Id.* 36:5–12; *see also* Def.'s Ex. R.) Additionally, the Alpha and RKK Contracts (collectively "Consulting Contracts") do not incorporate, either directly or by reference, the terms and conditions of the ICSP Policy, and they do not reference participation in OCIP. John Cousins, MTA's Manager of Procurement, testified that consultant contracts of the type entered into by Alpha and RKK typically do not contain an application for enrollment in OCIP because "[w]e [MTA] don't enroll consultants in OCIP." [7] (Cousins Dep., Def.'s Ex. B, at 27:3–7, 41:1–10.) In fact, the Consulting Contracts require Alpha and RKK to enter into their own workers' compensation and comprehensive general liability insurance and to name MTA as an additional insured under their comprehensive general liability policies. (Alpha Contract, Def.'s Ex. G, at 22, 64–65; RKK Contract, Def.'s Ex. F, at 30.) Moreover, both the RKK and Alpha Contracts state that they are the "exclusive statement" of the parties' agreement, suggesting that Plaintiffs' reliance on the provisions of the ICSP Policy is misplaced. (Alpha Contract, Def.'s Ex. G, at 24; RKK Contract, Def.'s Ex. F, at 32.) Because Alpha and RKK cannot demonstrate that they were provided coverage under OCIP, I find that they are not covered by the ICSP Policy.

■ Plaintiffs' alternative argument, that Alpha and RKK should be covered under the ICSP Policy as third-party beneficiaries of the Policy and of the Maple Contract (Pls.' Reply 13) is unavailing. In Maryland

> a person for whose benefit a contract is made can maintain an action upon it. But before one can do so it must be shown that the contract was intended for his benefit; and, in order for a third party beneficiary to recover for a breach of contract *it must clearly appear that the parties intended to recognize him as the primary party in interest and as privy to the promise* .... In determining the intention of the parties, the language of the instrument is the primary source for that determination.

*Shillman v. Hobstetter,* 249 Md. 678, 241 A.2d 570, 575 (1968) (citations omitted) (emphasis added). Plaintiffs claim that Alpha and RKK are included within the Maple Contract's definition of "contractor" and that the ICSP Policy extends coverage "to third party beneficiaries, such as Alpha and RK & K, for whom the MTA promised in its contract with Maple to provide insurance under the OCIP program." (Pls.'

---

7. Though the ICSP Policy does not indicate how a contractor or subcontractor would come to be provided with workers' compensation or employer's liability coverage under OCIP, the Maple Contract more thoroughly explains the enrollment process. Paragraph 1.3.2 of the Maple Contract provides:

> OCIP coverage for any subcontractor requires a written determination of the enrollment of the applicable subcontractor by Owner [MTA]; Owner may, in its sole discretion, and at any time prior to or during the performance of Work by an applicable contractor or subcontractor, elect to not enroll or to cease enrollment of any contractor or subcontractor of any tier.

(Def.'s Ex. A, at I–15).

Plaintiffs argue that this language indicates that the enrollment requirement applies only to subcontractors, not contractors, as Plaintiffs claim Alpha and RKK are; contractors, Plaintiffs assert, are automatically enrolled in OCIP. (Pls.' Mem. 34.) I disagree. The Maple Contract indicates that MTA has complete discretion as to whether to enroll a contractor or subcontractor in OCIP. This conclusion is supported by Catharine Jones's testimony, in which Jones confirmed that "there is absolutely no automatic enrollment [in OCIP] for contractors." (Jones Dep., Def.'s Ex. Q, at 28:15–16.) Jones explained that contractors are always required to complete an enrollment form to be covered under OCIP. (Jones Dep., Def.'s Ex. Q, at 25:7–8.)

Reply 14–15.) Plaintiffs misinterpret the Maple Contract. Though the terms of the Contract provide that "[t]he MTA OCIP will provide ... coverage for contractors and subcontractors while performing Work on the project site" (Maple Contract, Def.'s Ex. A, at I–1), the Contract also states "Owner [MTA] may, in its sole discretion, and at any time prior to or during the performance of Work by an applicable contractor or subcontractor, elect to not enroll or to cease enrollment [in OCIP] of any contractor or subcontractor of any tier." (Id., at I–15.) Thus, it does not "clearly appear" from the terms of the Maple Contract that the parties to the Contract, MTA and Maple, intended to recognize Alpha and RKK as "primary part[ies] in interest." In fact, as discussed above, the record demonstrates that MTA clearly elected not to enroll Alpha or RKK in OCIP. Consequently, pursuant to Endorsement MS # 00006 of the ICSP Policy, Alpha and RKK are excluded from coverage under the Policy, and Plaintiffs' third-party-beneficiary argument effectively collapses into their unsuccessful argument that they are "Named Insured[s]."

As Alpha and RKK were not covered by the ICSP Policy, either as "Named Insured[s]" or as third-party beneficiaries of the Maple Contract, ICSP had no duty to defend or indemnify them in the underlying suit.

### B.

Plaintiffs next argue that, under the doctrine of equitable subrogation, they are entitled to reimbursement from ICSP based on their common law indemnity rights against individuals (Gray and Combs) who were leased by Alpha and RKK to MTA and who, Plaintiffs claim, are insured under the ICSP Policy. (Pls.' Reply 1–2.) Because I find that Gray and Combs were not insured under the ICSP Policy, Plaintiffs' motion for summary judgment fails.

In support of their claim that the ICSP Policy includes Gray and Combs as insureds, Plaintiffs assert that Gray and Combs were "employees" of MTA at the time of the Griffin incident. Under the section "WHO IS AN INSURED," the ICSP Policy includes "employees" of MTA. (ICSP Policy, Def.'s Ex. O, at 6.) The Policy does not define "employee" except to state that "employee" includes a "leased worker" but not a "temporary worker." (Id. 9.) "Leased worker" is defined as "a person leased to [MTA] by a labor leasing firm under an agreement between [MTA] and the labor leasing firm, to perform duties related to the conduct of [MTA's] business." (Id. 10.) A "temporary worker" is "a person who is furnished to [MTA] to substitute for a permanent 'employee' on leave or to meet seasonal or short-term workload conditions." (Id. 11–12.) Plaintiffs assert that Gray and Combs were "leased workers." (Pls.' Reply 4.)

■■■■ I need not determine whether Gray and Combs could be properly characterized as "employee[s]" or "leased worker[s]" of MTA because even if that characterization were appropriate, Plaintiffs may not use an equitable subrogation argument to circumvent their clear exclusion under the terms of the ICSP Policy. Under Maryland law, "any construction of a contract that makes another provision superfluous is generally disfavored." *National Cas. Co. v. Lockheed Martin Corp.,* 415 F.Supp.2d 596, 602 (D.Md.2006) (*citing Baltimore Gas & Elec. Co. v. Commercial Union Ins. Co.,* 113 Md.App. 540, 688 A.2d 496, 503 (Md.Ct.Spec.App.1996) ("A contract must be construed as a whole, and effect given to every clause and phrase, so as not to omit an important part of the agreement.")); *see also* 11 Richard A. Lord, Williston on Contracts § 32:5 (4th ed. 1992) ("An interpretation which gives effect to all provisions of the contract is

preferred to one which renders a portion of the writing superfluous, useless or inexplicable"). In this case, if I were to accept Plaintiffs' reading and find that the terms "employee[s]" or "leased worker[s]" applied to Gray and Combs, the ICSP Policy's exclusion of those contractors or subcontractors not provided coverage under OCIP, like Alpha and RKK, would be rendered effectively meaningless. As discussed above, Endorsement MS # 00006 of the ICSP Policy provides that no contractor or subcontractor will receive coverage under the Policy unless first provided coverage under OCIP. The enrollment process for OCIP (described above in note 6) gives MTA the discretion to choose which entities participate in OCIP. If MTA chose to explicitly exclude entities like Alpha and RKK from coverage, but the employees those entities provided to MTA were nonetheless covered, the terms of Endorsement MS # 00006 would have no effect. As Alpha and RKK have no relationship with MTA but to provide " 'competent personnel' to work on MTA construction projects" (Pls.' Mem. 23), insuring an Alpha or RKK employee against third-party claims would have essentially the same effect as insuring Alpha or RKK themselves, a result clearly contrary to the terms of Endorsement MS # 00006.

As I find that Gray and Combs are not insured under the ICSP Policy, Plaintiffs are not entitled to equitable subrogation from Defendant for their defense and settlement expenses in the underlying suit.

## IV.

In its counterclaim, ICSP argues that it is entitled to contribution or indemnity from Alpha for the defense and settlement costs it expended on behalf of MTA in the Griffin suit. (Def.'s Answer ¶ 92.) ICSP claims that Alpha breached the Alpha Contract by failing to defend or indemnify MTA in the Griffin suit. (*Id.* ¶ 90.) Because Alpha refused to defend MTA, ICSP paid MTA's defense and settlement costs. (*Id.* ¶ 74, 76.) The ICSP Policy contains a subrogation provision which permits ICSP to seek reimbursement of costs it expended on behalf of MTA in defending and settling a claim. (ICSP Policy, Def.'s Ex. O, at 9.) Pursuant to that provision, ICSP claims that it is entitled to the contribution or indemnity that Alpha owed MTA in the underlying suit. (Def.'s Answer ¶ 92.)

Because I find that Alpha owed MTA a duty to defend and indemnify in the underlying suit, ICSP is entitled to reimbursement from Alpha for the costs it expended on behalf of MTA in the Griffin suit.

In Maryland, an insurer has a duty to defend when there exists a "potentiality that the claim could be covered by the policy." *Litz v. State Farm Fire and Cas. Co.*, 346 Md. 217, 695 A.2d 566, 570 (1997) (citation omitted). In this case, the source of Alpha's duty to defend is not an insurance policy,[8] but rather the Alpha Contract, which provides "[t]he consultant [Alpha] shall pay any claims for personal injury, bodily injury, or property damage which the Consultant is legally obligated to pay and shall indemnify the State against such claims. The Consultant shall undertake to defend any third party claim seeking such damages." (Alpha Contract, Def.'s Ex. G, at Alpha 0064.) The indemnity provision of the Alpha Contract requires Alpha to indemnify MTA against all

---

**8.** The Alpha Contract provides that Alpha "shall procure and pay for" comprehensive general liability insurance and shall name MTA as an additional insured under that policy. (Alpha Contract, Def.'s Ex. G, at 22.) The record demonstrates that Alpha did indeed obtain such insurance with USFG and name MTA as an "Additional Insured" (Def.'s Ex. H.) However, the policy itself is not in evidence, so I have no way of discerning its terms.

claims arising from "errors, omissions, negligent acts ... of [Alpha] or those of his ... agents or employees under this Contract...." (*Id.*) A negligence claim is clearly potentially covered. The Griffin suit was a personal injury action by a third party which specifically named Gray, an Alpha employee, as committing the act which led to Griffin's injury. (*See* Pls.' Ex. 9 ¶¶ 11–13, 17–19.) The facts alleged in the underlying complaint clearly brought the claim within Alpha's duty to defend under the Alpha Contract.

The duty to indemnify is more narrow. While the duty to defend depends only upon the facts as alleged, the duty to indemnify depends upon liability. *Walk v. Hartford Cas. Ins. Co.*, 382 Md. 1, 852 A.2d 98, 106 (2004) (citation omitted). The Fourth Circuit has held that the duty to indemnify may be triggered by a settled liability. *St. Paul Fire & Marine Ins. Co. v. Am. Int'l Specialty Lines Ins. Co.*, 365 F.3d 263, 274 (4th Cir.2004). The issue is whether the claims against the named defendants in the underlying suit and the facts pled in that action would give rise to an indemnification obligation under the agreement between the parties. *Id.* The indemnity provision of the Alpha Contract provides that Alpha shall indemnify MTA

> from and against all claims, suits, judgements, expenses, actions, damages and costs of every name and description arising out of or resulting from errors, omissions, negligent acts, negligent performance or nonperformance of the services

of the Consultant [Alpha] or those of his subcontractors, agents or employees under this Contract....

(Alpha Contract, Def.'s Ex. G, at Alpha 0064.) The facts pled and the claims asserted in the underlying action provide sufficient evidence to determine that the settled liability is encompassed by Alpha's indemnification obligation. *See St. Paul Fire & Marine Ins. Co.*, 365 F.3d at 273–74. The Griffin complaint charged the defendants (including Alpha) "by and through their various agents, servants, and/or employees" with negligence. (Pls.' Ex. 9 ¶ 17.) Specifically, the complaint alleged that the plywood which injured Griffin fell when Gray, an Alpha employee,[9] was handling it (*id.* ¶¶ 12, 13), and the testimony in the underlying action demonstrates that Gray was indeed inspecting and lifting the plywood when it fell, a duty that was part of his performance under the Alpha Contract. (*See e.g.,* Gray Dep., Def.'s Ex. K, at 49:20–21; Def.'s Ex. L, at Alpha 0089.) Plaintiffs themselves admit that the fact that Griffin was injured when Gray was inspecting the plywood "may be some evidence of Gray's negligence." (Pls.' Reply 20.) Though Griffin charged the named defendants collectively with negligence, she alleged that it was Gray's actions or omissions which caused her injury. (Pls.' Ex. 9 ¶ 12.) As Gray was an "employee[ ]" of Alpha, the settlement of Griffin's allegations against him triggered Alpha's duty to indemnify MTA.

9. Plaintiffs claim that IC SP has no right to indemnity where the grounds for the Griffin claim are based on the alleged acts and omissions of Gray, who Plaintiffs claim was a borrowed servant of MTA. (Pls.' Reply 18.) Plaintiffs' argument is unavailing. As the Fourth Circuit has reasoned, "[u]nder Maryland law, in cases like this one between a general employer and a borrowing employer, 'whatever the status of an employee under the "borrowed servant" doctrine, the parties may allocate between themselves the risk of any loss resulting from the employee's negligent acts.'" *NVR, Inc. v. Just Temps, NC*, 31 Fed. Appx. 805, 807 (4th Cir.2002) (per curiam, unpublished) (*quoting Sea Land Indus., Inc. v. General Ship Repair Corp.*, 530 F.Supp. 550, 563 (D.Md.1982)). Thus, if the parties contractually agreed that one or the other of them should bear the risk of damage caused by a particular employee, that employee's status under the borrowed servant doctrine is immaterial. *See id.* at 807–08.

Thus, I find that Alpha breached its duties to defend and indemnify MTA in the underlying action, and ICSP is entitled to reimbursement from Alpha the costs it incurred in the underlying suit.

## V.

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment is DENIED, and Defendant's Cross–Motion for Summary Judgment is GRANTED. Judgment is entered in favor of Defendant against Alpha Construction and Engineering Corp. in the amount of $400,000 plus prejudgment interest and costs.[10]

A separate order effecting the rulings made in this memorandum is being entered herewith.

## ORDER

For the reasons stated in the accompanying Opinion, it is, this 9th day of March, 2009, ORDERED:

1. Plaintiffs' motion for summary judgment is denied;

2. Defendant's motion for summary judgment is granted;

3. Judgment is entered in favor of Defendant against Alpha Construction and Engineering Corp. in the amount of $400,000, plus prejudgment interest and costs.

---

**10.** $400,000 is the specific amount requested by ICSP in its counterclaim (Def.'s Answer 14), and it is undisputed that ICSP paid that amount in settling the Griffin suit. (Def.'s Ex. Z, at 3.)