Affirmed in part, vacated in part, and remanded by unpublished PER CURIAM opinion. Senior Judge Beam wrote a concurring and dissenting opinion.
Unpublished opinions are not binding precedent in this circuit.
PER CURIAM:
The plaintiffs in this declaratory judgment action, Alpha Construction and Engineering Corporation (“Alpha”), Rummel, Klepper & Kahl (“RKK”), United States Fidelity and Guaranty Company (“USF & G”), and The American Insurance Company (“American”) (collectively, the “Plaintiffs”), appeal from the district court’s judgment in favor of defendant The Insurance Company of the State of Pennsylvania (“ICSP,” or the “Defendant”), resolving an insurance coverage dispute. See Alpha Constr. & Eng’g Corp. v. Ins. Co. of State of Pa., 601 F.Supp.2d 684 (D.Md.2009) (the “Opinion”) (awarding summary judgment to ICSP and denying summary judgment to Plaintiffs). As explained below, we are content to affirm the district court on its insurance coverage declaration. On the other hand, we vacate its reimbursement award and remand for further proceedings.
I.
A.
The Maryland Transit Administration (“MTA”) is a state governmental agency that provides rail, bus, and other transit services within the confines of Maryland.[1] *820 MTA’s Construction Division manages its capital improvement programs. Most of the Construction Division’s staff is leased by MTA from outside independent firms through so-called “consultant contracts.” Alpha and RKK were independent firms that provided inspectors and resident engineers to MTA for its projects. Various agreements between MTA, Alpha, RKK, and other firms allowed MTA to have a labor pool readily available for its various construction projects.
In January 2008, MTA was involved in construction and improvement work at the Rogers Avenue Metro Station in Baltimore (the “Weatherization Project”), and a firm called Maple Construction (“Maple”) was the general contractor for this undertaking. On January 13, 2003, MTA received a report of a safety violation at the Rogers Avenue station, and two MTA inspectors, Michael Gray and Anthony Combs (inspectors supplied to MTA by Alpha and RKK, respectively), were dispatched to the station. Upon arriving at the Rogers Avenue station, Gray saw a large piece of plywood perched above an escalator. The evidence reflects that Maple’s employees used several similar boards to cover an opening to the escalator while they worked on the Weatherization Project during daylight hours. During the night, all but one board was removed, however, apparently because Maple’s owner and project foreman decided there was no point in taking the last board down. Although Gray noticed some wire on or near the single board, he could not ascertain whether the plywood was tied securely. While in the process of examining the board, Gray lifted and dislodged it, causing the board to fall onto the back and head of MTA passenger Mary Griffin as she ascended the escalator. Griffin sustained serious and permanent injuries as a result.
Griffin thereafter settled her personal injury lawsuit arising from the foregoing incident for the sum of $855,000. The settlement involved a number of parties— MTA, Maple, MTA’s and Maple’s general liability insurer (ICSP), Alpha and its general liability carrier (USF & G), and RKK and its general liability carrier (American). In the Settlement Funding Agreement, each of the settling parties reserved the right to seek reimbursement from one another for the defense costs and indemnity payments incurred. Nonetheless, the actual settlement funds came from the three insurers — ICSP, USF & G, and American — and the Settlement Funding Agreement was signed by representatives of each of these insurers. The Agreement states that the possible negligence and liability of the various parties had not been adjudicated or apportioned and expressly reserved such issues for future determination.
The general liability policy issued to MTA by ICSP for the Weatherization Project (the “ICSP Policy”) was part of an owner controlled insurance program, called an “OCIP.” OCIPs, also known as wrap-around insurance programs, provide insurance coverage for those contractors and subcontractors supplying direct labor or personnel at a construction project, and insure against the risk of loss arising from, inter alia, property damage, personal injury, and workers’ compensation claims. Under the ICSP Policy issued to MTA, ICSP provided a defense for both MTA and Maple in the Griffin lawsuit, but denied coverage for Alpha and RKK and their employees Gray and Combs.
B.
As a result of the foregoing events, Alpha and RKK, on behalf of themselves and *821 their insurers USF & G and American, filed this declaratory judgment action in the district court, alleging diversity jurisdiction and seeking a declaration that Alpha and RKK and their employees, Gray and Combs, were insureds under the ICSP policy. Alpha and RKK sought a declaration from the district court that ICSP owed them and/or Gray and Combs a duty to defend the Griffin lawsuit and a duty to indemnify them for the settlement contributions made on their behalf. ICSP counterclaimed against Alpha, alleging that it was entitled to contribution or indemnity from Alpha for the costs it had incurred in defending MTA and in paying the sum of $400,000 to help settle the Griffin lawsuit.
1.
In addressing the cross-motions of the parties for summary judgment, the district court declared in its Opinion that ICSP was entitled to prevail on the insurance coverage contentions presented by the Plaintiffs.[2] First, the court assessed the Plaintiffs’ contention “that Alpha and RKK are ‘insureds’ under the ICSP Policy,” and concluded that “[t]he terms of the ICSP Policy demonstrate that the Policy does not provide coverage to Alpha and RKK.” Alpha Constr. & Eng’g, 601 F.Supp.2d at 689. The court explained:
Plaintiffs argue that Alpha and RKK are included within the Policy’s definition of “Named Insured,” which includes “[a]ll contractors, all tiers of subcontractors, each separate contractor of [MTA], others to whom [MTA] Contracts to furnish insurance under the insurance program” for the Weatherization Project. Plaintiffs describe Alpha and RKK as “contractors,” “separate contractors of [MTA],” or, alternatively, “others to whom [MTA] Contracts to furnish insurance. ...”
Alpha and RKK might appear to be insureds under the Policy’s definition of “Named Insured”; however, they are explicitly excluded from coverage by Endorsement MS # 00006 of the Policy. The Endorsement provides that “coverage for ‘Named Insured(s)’ shall be au *822 tomatically effected based upon issuance of a workers compensation policy as afforded by the wrap-up program/owner controlled insurance program.” The Endorsement also states that the Policy “does not apply to any of the following as an insured: ... [ejxcept as respects to any contractor or subcontractor who will have employees engaged in work at the project hereof who are not provided workers compensation and employers liability coverage under the owner provided insurance program, unless specifically endorsed to the policy.” Although this provision is not artfully worded, it is included among provisions which explicitly list those entities and individuals who are not covered under the Policy. Its import is clear: those contractors or subcontractors who are not provided workers’ compensation and employer’s liability coverage under OCIP are not insured under the ICSP Policy. Thus, if Alpha and RKK were not provided workers’ compensation and employer’s liability coverage under OCIP, they were not insured under the ICSP Policy.
Plaintiffs present no evidence that Alpha and RKK were provided any coverage under OCIP. In fact, the record evidence indicates quite the opposite. Catharine Jones, MTA’s project manager of OCIP, testified in her deposition that neither Alpha nor RKK was ever covered under OCIP. Jones identified at her deposition a spreadsheet dated March 31, 2007, and kept by MTA’s broker, listing all of the companies that were ever enrolled in the OCIP starting in 2000. Alpha and RKK do not appear on the list. Additionally, the Alpha and RKK Contracts (collectively “Consulting Contracts”) do not incorporate, either directly or by reference, the terms and conditions of the ICSP Policy, and they do not reference participation in OCIP. John Cousins, MTA’s Manager of Procurement, testified that consultant contracts of the type entered into by Alpha and RKK typically do not contain an application for enrollment in OCIP because “[w]e [MTA] don’t enroll consultants in OCIP.” In fact, the Consulting Contracts require Alpha and RKK to enter into their own workers’ compensation and comprehensive general liability insurance and to name MTA as an additional insured under their comprehensive general liability policies. Moreover, both the RKK and Alpha Contracts state that they are the “exclusive statement” of the parties’ agreement, suggesting that Plaintiffs’ reliance on the provisions of the ICSP Policy is misplaced.
Id. at 689-90 (alterations in original) (footnotes and citations omitted). According to the court, “[b]ecause Alpha and RKK cannot demonstrate that they were provided coverage under OCIP, ... they are not covered by the ICSP Policy.” Id. at 690. Thus, “ICSP had no duty to defend or indemnify [Alpha and RKK] in the underlying suit.” Id. at 691.[3]
Next, the district court assessed the Plaintiffs’ contention “that, under the doctrine of equitable subrogation, they are entitled to reimbursement from ICSP based on their common law indemnity rights against individuals (Gray and Combs) who were ... insured under the ICSP Policy.” Alpha Constr. & Eng’g, 601 F.Supp.2d at 691. The court concluded that, because “Gray and Combs were not insured under the ICSP Policy,” there was no merit to the Plaintiffs’ equitable subro- *823 gation theory. Id. On this issue, the court explained:
In support of their claim that the ICSP Policy includes Gray and Combs as insureds, Plaintiffs assert that Gray and Combs were “employees” of MTA at the time of the Griffin incident. Under the section “WHO IS AN INSURED,” the ICSP Policy includes “employees” of MTA. The Policy does not define “employee” except to state that “employee” includes a “leased worker” but not a “temporary worker.” “Leased worker” is defined as “a person leased to [MTA] by a labor leasing firm under an agreement between [MTA] and the labor leasing firm, to perform duties related to the conduct of [MTA’s] business.” A “temporary worker” is “a person who is furnished to [MTA] to substitute for a permanent ‘employee’ on leave or to meet seasonal or short-term workload conditions.” Plaintiffs assert that Gray and Combs were “leased workers.”
I need not determine whether Gray and Combs could be properly characterized as “employee[s]” or “leased worker[s]” of MTA because even if that characterization were appropriate, Plaintiffs may not use an equitable subrogation argument to circumvent their clear exclusion under the terms of the ICSP Policy. Under Maryland law, “any construction of a contract that makes another provision superfluous is generally disfavored.” National Cas. Co. v. Lockheed Martin Corp., 415 F.Supp.2d 596, 602 (D.Md.2006) (citing Baltimore Gas & Elec. Co. v. Commercial Union Ins. Co., 113 Md.App. 540, 688 A.2d 496, 503 (1996) (“A contact must be construed as a whole, and effect given to every clause and phrase, so as not to omit an important part of the agreement.”)); see also 11 Richard A. Lord, Williston on Contracts § 32:5 (4th ed. 1992) (“An interpretation which gives effect to all provisions of the contract is preferred to one which renders a portion of the writing superfluous, useless or inexplicable”). In this case, if I were to accept Plaintiffs’ reading and find that the terms “employee[s]” or “leased worker[s]” applied to Gray and Combs, the ICSP Policy’s exclusion of those contractors or subcontractors not provided coverage under OCIP, like Alpha and RKK, would be rendered effectively meaningless. As discussed above, Endorsement MS # 00006 of the ICSP Policy provides that no contractor or subcontractor will receive coverage under the Policy unless first provided coverage under OCIP. The enrollment process for OCIP gives MTA the discretion to choose which entities participate in OCIP. IF MTA chose to explicitly exclude entities like Alpha and RKK from coverage, but the employees those entities provided to MTA were nonetheless covered, the terms of Endorsement MS # 00006 would have no effect. As Alpha and RKK have no relationship with MTA but to provide “ ‘competent personnel’ to work on MTA construction projects,” insuring an Alpha or RKK employee against third-party claims would have essentially the same effect as insuring Alpha or RKK themselves, a result clearly contrary to the terms of Endorsement MS # 00006.
Alpha Constr. & Eng’g, 601 F.Supp.2d at 691-92 (alterations in original) (citations omitted). The court summarized that, because “Gray and Combs are not insured under the ICSP Policy, Plaintiffs are not entitled to equitable subrogation from Defendant for their defense and settlement expenses in the underlying suit.” Id. at 692.
2.
The district court then focused in its Opinion on ICSP’s counterclaim for reimbursement, in which ICSP asserted “that *824 Alpha breached the Alpha Contract by failing to defend or indemnify MTA in the Griffin suit.” Alpha Constr. & Eng’g, 601 F.Supp.2d at 692. The court agreed with ICSP that, pursuant to the Alpha Contract, “Alpha owed MTA a duty to defend and indemnify in the underlying suit.” Id. The Opinion explained the court’s reimbursement award as follows:
In Maryland, an insurer has a duty to defend when there exists a “potentiality that the claim could be covered by the policy.” Litz v. State Farm Fire and Cas. Co., 346 Md. 217, 695 A.2d 566, 570 (1997) (citation omitted). In this case, the source of Alpha’s duty to defend is not an insurance policy, but rather the Alpha Contract, which provides “[t]he consultant [Alpha] shall pay any claims for personal injury, bodily injury, or property damage which the Consultant is legally obligated to pay and shall indemnify the State against such claims. The Consultant shall undertake to defend any third party claim seeking such damages.” The indemnity provision of the Alpha Contract requires Alpha to indemnify MTA against all claims arising from “errors, omissions, negligent acts ... of [Alpha] or those of his ... agents or employees under this Contract. ...” A negligence claim is clearly potentially covered. The Griffin suit was a personal injury action by a third party which specifically named Gray, an Alpha employee, as committing the act which led to Griffin’s injury. The facts alleged in the underlying complaint clearly brought the claim within Alpha’s duty to defend under the Alpha Contract.
The duty to indemnify is more narrow. While the duty to defend depends only upon the facts as alleged, the duty to indemnify depends upon liability. Walk v. Hartford Cas. Ins. Co., 382 Md. 1, 852 A.2d 98, 106 (2004) (citation omitted). The Fourth Circuit has held that the duty to indemnify may be triggered by a settled liability. St. Paul Fire & Marine Ins. Co. v. Am. Int’l Specialty Lines Ins. Co., 365 F.3d 263, 274 (4th Cir.2004). The issue is whether the claims against the named defendants in the underlying suit and the facts pled in that action would give rise to an indemnification obligation under the agreement between the parties. Id. The indemnity provision of the Alpha Contract provides that Alpha shall indemnify MTA
from and against all claims, suits, judgements, expenses, actions, damages and costs of every name and description arising out of or resulting from errors, omissions, negligent acts, negligent performance or nonperformance of the services of the Consultant [Alpha] or those of his subcontractors, agents or employees under this Contract. ...
The facts pled and the claims asserted in the underlying action provide sufficient evidence to determine that the settled liability is encompassed by Alpha’s indemnification obligation. See St. Paul Fire & Marine Ins. Co., 365 F.3d at 273-74. The Griffin complaint charged the defendants (including Alpha) “by and through their various agents, servants, and/or employees” with negligence. Specifically, the complaint alleged that the plywood which injured Griffin fell when Gray, an Alpha employee, was handling it, and the testimony in the underlying action demonstrates that Gray was indeed inspecting and lifting the plywood when it fell, a duty that was part of his performance under the Alpha Contract. Plaintiffs themselves admit that the fact that Griffin was injured when Gray was inspecting the plywood “may be some evidence of Gray’s negligence.” Though Griffin charged the named defendants collectively with neg *825 ligence, she alleged that it was Gray’s actions or omissions which caused her injury. As Gray was an “employee! ]” of Alpha, the settlement of Griffin’s allegations against him triggered Alpha’s duty to indemnify MTA.
Alpha Constr. & Eng’g, 601 F.Supp.2d at 692-93 (alterations in original) (footnotes and citations omitted). In these circumstances, the court concluded “that Alpha breached its duties to defend and indemnify MTA in the underlying action, and ICSP is entitled to reimbursement from Alpha [in the amount of] the costs it incurred in the underlying suit.” Id. at 694. The court awarded ICSP $400,000 — “the specific amount requested by ICSP in its counterclaim” and the amount “that ICSP paid ... in settling the Griffin suit.” Id. at 694 & n. 10.
In accordance with its Opinion, the district court entered an Order on March 9, 2009, denying the Plaintiffs’ request for summary judgment, awarding summary judgment to ICSP, and imposing a reimbursement award of $400,000 plus prejudgment interest and costs. The Plaintiffs timely noted this appeal, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.
II.
We review de novo a district court’s award of summary judgment, applying the standards set forth in Federal Rule of Civil Procedure 56 and viewing the facts in the light most favorable to the nonmoving party. See Lee v. York Cnty. Sch. Div., 484 F.3d 687, 693 (4th Cir.2007). Where “an appeal from a denial of summary judgment is raised in tandem with an appeal of an order granting a cross-motion for summary judgment, we have jurisdiction to review the propriety of the denial of summary judgment by the district court.” Monahan v. Cnty. of Chesterfield, Va., 95 F.3d 1263, 1265 (4th Cir.1996) (internal quotation marks omitted).
III.
On appeal, the Plaintiffs challenge two aspects of the district court’s Opinion. First, they contend that the court erred in its insurance coverage declaration, in that Alpha and RKK are entitled to reimbursement from ICSP under the doctrine of equitable subrogation, because Gray and Combs were “insureds” under the ICSP Policy.[4] We reject the Plaintiffs’ contention in this regard and affirm the insurance coverage declaration on the reasoning of the district court. See supra Part I.B.l.
Second, the Plaintiffs assert that the district court erred in imposing the $400,000 reimbursement award. On this aspect of the Opinion, we agree with the district court that, under the Alpha Contract, Alpha was obliged to defend MTA in the underlying Griffin suit. Nevertheless, we cannot endorse the court’s ruling that, as a matter of law, Alpha was required to indemnify MTA, thus entitling ICSP to reimbursement of the full amount of costs it incurred in settling Griffin’s claims. See supra Part I.B.2.
As the Plaintiffs maintain, the issue of whether Alpha had a duty to indemnify MTA depends on whether Gray’s negligence was the sole (or at least a contributing) cause of Griffin’s injuries. That is so because, finder the express terms of the Alpha Contract, Alpha is required to indemnify MTA for only Alpha’s or its employee’s negligence. Significantly, Alpha did not agree to indemnify MTA for the *826 negligence of MTA or anyone else. See Heat & Power Corp. v. Air Prods. & Chems., Inc., 320 Md. 584, 578 A.2d 1202, 1208 (Md.1990) (recognizing “that a [non-insurance] contract will not be construed to indemnify a person against his own negligence unless an intention to do so is expressed in those very words or in other unequivocal terms” (internal quotation marks omitted)). Thus, the $400,000 reimbursement award is appropriate only if Gray was 100% at fault for the Griffin incident.
Although Gray was conceivably negligent at the Rogers Avenue station, this question has not yet been determined as required by the parties’ Settlement Funding Agreement. There was, at best, a comedy of errors leading to Griffin’s injuries. Surely the Maple employee that left the board in place after-hours, and perhaps failed to properly secure it, was possibly negligent as well. In paragraph seventeen of Griffin’s complaint, she alleges that all of the defendants (including MTA, Maple, Alpha, and RKK) and their various agents and employees were negligent for, inter alia, (1) failing to prevent falling objects, (2) failing to remedy the dangerous situation, (3) failing to give notice of the dangerous condition, (4) failing to prevent the accident, (5) failing to properly oversee and inspect the site, (6) failing to close the site during construction, (7) failing to inspect the site entrance, and (8) failing to secure the materials at the site. In other words, Griffin’s complaint did not single out Gray as the sole tortfeasor.
The district court thus erred when it concluded that “[t]he facts pled and the claims asserted in the underlying action provide sufficient evidence to determine that the settled liability is encompassed by Alpha’s indemnification obligation.” Alpha Constr. & Eng’g, 601 F.Supp.2d at 693. Rather, Alpha’s negligence-based liability, if any, must actually be adjudicated or agreed upon before it can be determined whether Alpha is obliged to indemnify MTA and, if so, in what amount. Cf. St. Paul Fire & Marine Ins. Co. v. Am. Int’l Specialty Lines Ins. Co., 365 F.3d 263, 273-75 (4th Cir.2004) (concluding summary judgment appropriate where one party had agreed to indemnify all parties for ordinary negligence and it was undisputed that settlement liability was for ordinary negligence only). In these circumstances, we are constrained to vacate the reimbursement award and remand for further proceedings.
IV.
Pursuant to the foregoing, we affirm in part, vacate in part, and remand for such other and further proceedings as may be appropriate.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED

. The MTA is liable for its contracts and torts and for the torts of its officers, agents, and employees in connection with the perform- *820 anee of the duties and functions of the agency. See Md.Code Ann., Transp. § 7-702(a).

. Importantly, in issuing its coverage declaration, the district court recognized that "[t]he contracts in dispute in this case were made in Maryland and, accordingly, Maryland substantive law governs.” Alpha Constr. & Eng’g, 601 F.Supp.2d at 688. The court further recognized that,
[w]hen interpreting the meaning of an insurance policy, Maryland courts “construe the instrument as a whole to determine the intention of the parties.” Clendenin Bros., Inc. v. U.S. Fire Ins. Co., 390 Md. 449, 889 A.2d 387, 393 (2006) (citing Cheney v. Bell Nat'l Life Ins. Co., 315 Md. 761, 556 A.2d 1135, 1138 (1989)). Courts will look first to the contract language employed by the parties to determine the scope and limitations of the insurance coverage. Id. (quoting Cole v. State Farm Mut. Ins. Co., 359 Md. 298, 753 A.2d 533, 537 (2000)). The court is to give a term within the contract its "usual, ordinary and accepted meaning unless there is evidence that the parties intended to employ it in a special or technical sense.” Id. (citations omitted). Maty-land courts will examine "the character of the contract, its purpose, and the facts and circumstances of the parties at the time of execution.” Id. (quoting Pacific Indent. Co. v. Interstate Fire & Cas. Co., 302 Md. 383, 488 A.2d 486, 488 (1985)).
If the terms used in the insurance policy are unambiguous, the court will determine the meaning of the terms of the contract as a matter of law; however, if the language is ambiguous, extrinsic evidence may be consulted. Id. (citations omitted). A term of a contract is ambiguous "if, to a reasonably prudent person, the term is susceptible to more than one meaning.” Id. (citing Cole, 753 A.2d at 537). Summary judgment is appropriate when the contract in question is unambiguous or when an ambiguity can be resolved by reference to extrinsic evidence. Washington Met. Area Transit Auth. v. Potomac Inv. Props., Inc., 476 F.3d 231, 235 (4th Cir.2007).
Alpha Constr. & Eng’g, 601 F.Supp.2d at 688-89.

. Notably, the district court also rejected the Plaintiffs’ alternative theory "that Alpha and RKK should be covered under the ICSP Policy as third-party beneficiaries of the Policy and of the Maple Contract." See Alpha Constr. & Eng’g, 601 F.Supp.2d at 690-91.

. The Plaintiffs have abandoned on appeal their theory that Alpha and RKK were "insureds” under the ICSP Policy. See Br. of Appellants 21 n. 10. ("While Appellants maintain that the District Court’s ruling was incorrect, Appellants do not raise that issue in this Appeal.”).